## LAFARGUE *v.* MARKLEY.

Decided February 6, 1892.

*Married woman's property—Sale by husband—Ratification—Confirmation.*
   A husband sold his wife's horse in her absence and without her consent,
   and executed a bill of sale, beneath which he wrote an order to her to
   deliver the horse to the vendee. She either delivered the horse to the
   vendee or permitted him to take it without objection. There was no evi-
   dence that the husband assumed to act as the wife's agent, or that the
   vendee was damaged by the wife's failure to claim the horse. In a suit
   by her to recover the horse, *held*, there was no ratification of the sale
   because the husband did not assume to act as the wife's agent; nor was
   there a confirmation of the sale, since that must rest upon some consid-
   eration upholding it or upon an estoppel.

APPEAL from *Arkansas* Circuit Court.
JOHN M. ELLIOTT, Judge.

*Gibson & Holt* for appellants.

1.   The court erred in refusing to allow King to testify
whether he had any interest in the suit. Under this ruling
King's testimony went to the jury as from an interested
party, and would not have the weight it otherwise would
have had.

2.   The first instruction for appellee was too broad and
misleading, even though it was abstract law. It should have
been modified so as to leave to the jury to say whether Mrs.
Markley made her husband her agent to sell, and whether
she had ratified the sale in any way.

3.   The fourth is not law. *Executed* contracts made on
Sunday are valid. 12 Met., 24; 9 Vt., 310.

4.   There is no proof of fraud or failure of consideration. Executed contracts, tainted with fraud, will not be relieved against.   26 Ark., 322.   The consideration cannot be questioned except by the party making it, and only by him to show coercion and fraud.   24 Ark., 119.

5.   Prayer No. 4 asked by appellant is in the language of section 4636, Mansf. 'Dig.

*E. S. Johnson* for appellee.

BATTLE, J.   On the 7th of November, 1889, David Markley, who was the husband of Minerva Markley, sold a certain horse to Ed Lafargue and executed to him a bill of sale, in which he recited that he had sold the horse to Lafargue, and received for him $150.   Beneath the bill of sale was an order to Minerva to deliver the horse to Lafargue, which was signed by the husband.   John King presented this order to the wife on Sunday following the sale. The horse was delivered to King on the same day.   About two months thereafter this action was brought by the wife against Lafargue for the possession of the horse.

Upon the trial of the action there was no evidence adduced to show that the wife had given the husband authority to sell the horse.   He was sold and the bill of sale was executed in Little Rock in her absence and while she was in a distant county.   At this time, it seems, the husband was accused of a criminal offense, and was held to answer the same in the district court of the United States held at Little Rock.

Mrs. Markley testified that the horse was her property, and had been purchased for her and paid for with her own money; that the order was presented to her by King on Sunday; that when he presented it she asked him where her husband was, and he said he "had run off," and advised her to make him keep out of the way of the United States marshal, and then and after this presented the order ; that she never said he might, or could not, take the horse; that she was so troubled that she did not know what to do ; that her son Oscar caught the horse and King took him off; that King

told her that he did not know what Lafargue paid for the horse, or that he had paid anything, and that she never said anything to Lafargue about the horse before or since the commencement of this suit.

King testified that when he presented the order to Mrs. Markley, she said the horse was in the field, and told her son Oscar to go and get him, which he did and delivered him to King, and that she made no objection to his taking the horse; and that he took the horse and delivered him to Lafargue. The defendant asked King the question : "Have you had any interest in or anything to do with the horse since you turned him over to Lafargue?" The plaintiff objected to it, and the court refused to allow it to be answered; and the defendant excepted. King denied having the conversation with Mrs. Markley about which she testified.

Lafargue testified that he purchased the horse of David Markley, and paid $150 for him.

Instructions were given at the instance of the plaintiff over the objections of the defendant, and others were asked for by the defendant and refused by the court. The result of the trial was a verdict and judgment in favor of the plaintiff for the recovery of the horse. A motion for a new trial was filed by Lafargue, which was denied; and he appealed.

The appellant asked and the court refused to instruct the jury as follows:

(1.) "A bill of sale is an executed contract, and the sufficiency of the consideration cannot be questioned by plaintiff."

(2.) "The law says married women may schedule their separate property; and if she fails to do this, the burden of proof is on her to show that the same is her separate property."

(3.) "If the jury believe from the evidence that the plaintiff was the owner of the horse in controversy, but had permitted her husband, D. B. Markley, to sell the same, and further

believe that said D. B. Markley did sell said horse to Ed
Lafargue, they should find a verdict for the defendant."

(4.) "If the jury believe from the evidence that the plain-
tiff had personal property in her own right, but had given
her husband control of the same and allowed him to dispose
of it, then she could not afterwards revoke any sale so made
by her husband."

All these requests were properly refused. Appellee claimed
the property in controversy as her own, and the court in-
structed the jury that the burden was on her to prove that
the horse was her property; and there was no evidence to
show that she had authorized her husband to sell, or that the
husband sold as her agent.

Another request was as follows: "If the jury believe from
the evidence that D. B. Markley executed the bill of sale,
and gave a written order on the same to the plaintiff to de-
liver up the horse to Ed Lafargue, and she did deliver him
on presentation of the same, it is a ratification of the sale as
made, and they will find for the defendant."

There was no evidence that the husband sold the horse for
or on behalf of the appellant. But assuming there could be
a ratification in such a case, the request was properly re-
fused; for it assumed that the delivery of the horse was a
ratification, without regard to the intention of the appellee
in making the delivery, when there was evidence tending to
prove there was no intent to ratify. For she testified that
when the order was presented she was in much trouble on
account of her husband, so much so that she did not know
what to do; and neither consented nor refused to deliver
the horse. From this it might be inferred that she had not
determined what course she would pursue as to the sale
of the horse at the time of the delivery; and that, at
that time, there was no specific intent to ratify the sale.
The mere delivery of the horse, without any intention to
ratify the same, would not estop Mrs. Markley from claiming
the horse. Lafargue was not induced by any act of hers to
purchase the horse. He was sold without her knowledge

and in her absence.   Neither was Lafargue damaged by any act of hers ; nor was there any duty resting upon her to make an effort to reclaim the property, or to notify the purchaser that it was hers. /

The following instructions were given by the court over the objections of the appellant :   " If the jury believe from the evidence that the horse in controversy is the property of the plaintiff, Minerva Markley, no sale or conveyance of her husband can defeat her right to the same or prevent her recovery in this action."   (2.)   If the jury believe from the evidence that the sale from Markley to Lafargue was procured by fraud or is without consideration, it would not effect the title to the horse, even if he belonged to Markley."   They were harmless for the reason the court instructed the jury that " the burden of proof " was " on the plaintiff, and before she " could " recover in this action it must appear from a preponderance of the testimony that the horse in controversy " was " the separate property of the plaintiff."

Another instruction given over the objection of the defendant was :   " Even if the jury believe that Mrs. Markley delivered the horse to King, and it was done on Sunday, such delivery cannot operate in any manner against her right, because the same was void, being done on Sunday." If it be conceded that this instruction was erroneous, it was not prejudicial to appellant, for the reason the sale was made by the husband in his own name and for his own benefit and there was no confirmation by the appellee.   There was no evidence that he was or assumed to act as her agent.   There was no question of agency, and consequently there was nothing to ratify.   She could have confirmed the sale, but this could not have been done by a simple ratification.   A confirmation, to have been binding upon her, must have rested upon some consideration upholding it, or upon an estoppel. *Hamlin* v. *Sears*, 82 N. Y., 327 : *People* v. *Supervisor of Onondaga*, 16 Mich., 259 ; Mechem on Agency, sec. 162 ; Wharton on Agency, sections 62–63 ; Ewell's Evans on Agency, star pages 62–63.   There was no evidence in this

case tending to prove either, and the instruction did no injury.

The refusal of the court to permit King to answer the question propounded to him was not prejudicial. There was no evidence that he was interested in the property in controversy.

Judgment affirmed.