MARTIN *v.* ADAMS.

Opinion delivered December 3, 1898.

USURY—RATIFICATION OF CONTRACT.—A borrower applied to a broker to secure for her a loan of $4,500. The broker applied to the agent of a foreign money lender who accepted the proposition for a loan, subject to his principal's approval. Under the broker's directions the borrower executed to the lender a mortgage with notes for a loan of $4,500 for five years, bearing 8 per cent. interest, and at the same time executed a separate mortgage with notes for $900 to the broker as a commission for procuring the loan. Thereupon the broker advanced the amount of the loan to the borrower on behalf of the lender, and transmitted to the latter the mortgage and notes for that amount. The lender ratified the act of the broker in making such advance and repaid same. *Held* that the borrower executed two separate contracts, viz., (1) to repay the loan, and (2) to pay her broker's commission; that the lender, in ratifying the act of the broker in advancing the amount of the loan, did not ratify the latter contract and make it a part of the former, so as to render the loan usurious. (Page 14.)

Appeal from Chicot Chancery Court.

JAMES F. ROBINSON, Chancellor.

*Rose & Coleman,* for appellants.

To charge a lender with usury on account of the act of his agent in demanding a compensation from the borrower, which, added to the interest paid the lender, made an amount in excess of the legal interest, the lender must have had knowledge of the transaction, or the circumstance must be such as to charge him therewith. 51 Ark. 545. The agency of the Corbin Banking Company could not be proved by the declarations of its officers. 33 Ark. 251; 37 Ark. 17; 46 Ark. 222. Its acts did not really bind the lender at all, because nothing shows the character of the services they were to render. 82 Ga. 299. Ratification must be made with full knowledge of all essential facts. Whart., Ag. §§ 65, 614. The fact that the banking company advanced the money on the approval of the loan did not constitute it the lender. 82 Ga. 299; 96 Ga. 227.

*Robt. E. Craig* and *Baldy Vinson*, for appellee.

If the Corbin Banking Company was the agent of the mortgage company, its exaction of usury binds the latter. 51 Ark. 544; 54 Ark. 50. Ratifying this act and accepting benefit of same would render it chargeable. Or if the banking company made the loan on its own responsibility, it was usurious, and the taint follows it into the hands of all transferees. 41 Ark. 331; 54 Ark. 572. The agreement for the interest and that for the bonus formed one entire contract. 13 S. W. 843. But the banking company was the real lender, in the first place. 11 S. W. 881.

BATTLE, J. In 1883, the Corbin Banking Company did a general banking business, and acted as loan brokers in the negotiation of loans. At the same time the American Mortgage Company was a corporation organized in Scotland to lend money on mortgages on farms in the United States, Canada, and other countries, having its principal office in Edinburgh, Scotland, and an agent (J. K. O. Sherwood) in New York City, whose duty it was to examine the titles to the farms offered as security, and accept applications for loans, subject to the approval or rejection of his principal. As early as 1877 the banking company commenced to negotiate with the mortgage company for loans, and in the course of many years succeeded

in securing a considerable number. They were secured in this manner: Applications for the loans, accompanied by statements showing an abstract of the applicant's title to the land which he offered to secure the loan and the value of the same, were first presented to the agent in New York City for acceptance or rejection. If he accepted, the applicant executed his notes for the amount desired to the mortgage company, and a mortgage to secure the same, and caused the mortgage to be recorded; and then the banking company sent the application and accompanying statements, and the notes and mortgage to the mortgage company in Edinburgh; and, if it approved the application, notes and mortgage, it paid the full amount of the notes to the banking company for the applicant.

In June, 1883, Mrs. Kate H. Adams applied to John C. Calhoun for a loan of $4,500 at 8 per cent. per annum interest, to be secured by a mortgage upon her lands. At the same time she entered into a written contract, by which she agreed to pay him $900 in the event he succeeded in securing the loan. Calhoun forwarded the application, and a statement showing an abstract of her title to the lands and their fertility and value to the banking company, which presented them to Sherwood, as agent, and he approved making the loan. The banking company thereupon prepared a note for $4,500, with five coupons for 8 per cent. interest attached, payable to the mortgage company, and a deed of trust in favor of Sherwood, as trustee, to secure the payment of the same. They also prepared five other notes aggregating $900, payable to Calhoun, and a deed of trust in favor of F. W. Dunton, cashier of the banking company, to secure them. The deeds of trust and the notes and coupons secured by them were then forwarded to Mrs. Adams, and she executed all of them. The deed in favor of Sherwood was filed for record on the 4th of July, 1883, and the other on the 26th of the same month. The former was recorded on the twentieth, the sixteenth day after it was filed. After this Calhoun returned the deeds, notes and coupons to the banking company, with information that he had drawn five drafts on them, aggregating $4,500, the amount of the loan, which drafts were duly paid by the drawees. The banking company then forwarded the note for $4,500 and the coupons for interes<

thereon, which were payable at their office in the city of New York, and the deed of trust executed to secure them, which contained a stipulation that it and the note secured thereby, except as therein otherwise provided, "should be construed according to the laws of Arkansas, where the same was made," and the application for the loan and the accompanying statements, to the mortgage company in Edinburgh, Scotland, which approved the loan and delivered to the banking company the $4,500. Calhoun transferred the other five notes and mortgage to the banking company in full payment for their services, having first received from them $90 for his interest therein. The mortgage company had no interest in them (the five notes) nor notice of their existence until long after the loan was made. As the maturity of the coupons approached, the banking company urged Mrs. Adams to pay them promptly. They did this without the knowledge or consent of the mortgage company, for the purpose of establishing and maintaining a good reputation as loan brokers. In this way they collected the two coupons first falling due and a part of the third, when Mrs. Adams refused or neglected to make further payments; and the trustee appointed to foreclose the mortgage in favor of Sherwood proceeded to sell her lands, and she brought this action to restrain him from so doing and to cancel the note for $4,-500 and the unpaid coupons, together with the mortgage securing them, alleging that the notes made payable to Calhoun were for interest on the $4,500, and that, adding the principal thereof and of the coupons, the interest she promised to pay on the loan amounted to 12 per cent. per annum; that the notes to Calhoun were executed and intended as a device to avoid the usury laws; and that all of the notes, coupons and mortgages were usurious, null and void. The mortgage company denied the usury and notice or knowledge of the existence of the notes payable to Calhoun, and asked that the mortgage executed to secure the note for $4,500 and coupons be foreclosed, and other proper relief. Upon evidence adduced at the hearing tending to prove the foregoing facts, the court below found that the loan was usurious and void, and cancelled the notes and mortgages.

To sustain the decree of the chancery court, it will be

necessary to find that the banking company made the loan, or that they were the agents of the mortgage company in making it, and that the mortgage company knew, or is presumed to have known, at the time it made it, that the banking company were to receive from Mrs. Adams, or her agent, compensation for procuring it greater than 2 per cent. on the amount lent, which, added to the 8 per cent., made the sum she paid and promised to pay for the loan exceed 10 per centum per annum.

But neither of these theories is correct. The banking company did not undertake to lend Mrs. Adams any money, but to procure a loan. To do so they presented her application to the agent of the mortgage company to get his approval, upon securing which they had reason, based upon past business transactions, to believe that they would be successful in their undertaking. Upon this belief they prepared and sent a note for $4,500, and coupons for 8 per cent. per annum interest thereon, payable to the mortgage company, and a mortgage, to Mrs. Adams; and she executed and returned them to the banking company. They advanced to her the amount of the note, and forwarded the note, coupons and mortgage to the mortgage company in Edinburgh, Scotland, and received in return from it the $4,500 for Mrs. Adams, which, having already advanced to her, they retained for their own use. They did not intend to lend to Mrs. Adams the money advanced to her, as evidenced by their conduct immediately afterwards, and did not, as the sequel proved. But they advanced it for the mortgage company, believing that it would ratify their acts in its behalf. They exacted no promise from her to return it at any future time. She did not become bound or undertake to pay them any interest for the use of money. If she became liable in any contingency to return the amount received from them, that liability was wiped out by the receipt of the money from the mortgage company.

The evidence clearly shows that the banking company was not the agent of the mortgage company. Two contracts were made by Mrs. Adams,—one with Calhoun, by which she agreed to pay him $900 to secure a loan of $4,500 to her, and the other with the mortgage company for the loan. The latter was not binding, and did not become operative until ratified. When

ratified by the mortgage company, it became a valid contract, and the parties to it were bound to perform it according to its terms. The mortgage company could not ratify the former contract, because it was not made in its name or for its benefit. *Lafargue* v. *Markley*, 55 Ark. 423. It was a separate and distinct contract, based upon a different consideration. Calhoun, or the banking company, in making it, did not assume to act for the mortgage company. Hence the mortgage company, in ratifying the latter, did not ratify the former, and make it a part of the latter.

The contract with the mortgage company is unlike those contracts which have been held usurious because the agent of the lender, either with the knowledge of his principal, or under circumstances from which the law presumed knowledge, received from the borrower a bonus in excess of the highest lawful rate of interest. Such contracts were held to be usurious because it was the duty of the lender to pay his agents for their services, and the borrower, in rewarding them, paid for services rendered the lender, paid the debt of the lender, and thereby paid him more than ten per cent per annum interest for the use of money. *Vahlberg* v. *Keaton*, 51 Ark. 545. That is not so in this case. The banking company and Calhoun were not in the employment of the mortgage company, and it was under no obligation to pay them for procuring the loan. It owed them no debt for their services, and Mrs. Adams, in compensating them, did not pay the mortgage company anything for the use of its money.

Our conclusion is that the note for $4,500 was not affected by usury, and that the mortgage to secure it should have been foreclosed.

The decree of the chancery court is, therefore, reversed, and the cause is remanded with directions to the court to render a judgment in favor of the mortgage company against Mrs. Adams and R. J. Adams for the amount due on the note for $4,500, and to foreclose the mortgage in favor of Sherwood, and for other proceedings not inconsistent with this opinion.

HUGHES and WOOD, JJ., dissent.