## Russell *v.* Pagan.

## Opinion delivered January 12, 1925.

1. DEEDS—CONDITIONAL ESTATE.—A deed from a father to his son, providing that the land should revert to the father's estate if the son died single, the condition being expressed in both the granting and the *habendum* clauses, *held* to convey a conditional, and not an absolute, estate.

2. DESCENT AND DISTRIBUTION—CONDITIONAL ESTATE.—Where a father conveyed land to his son on condition that the lands revert to the father's estate if the son should die single, and the son died single, the title passed by inheritance to the grantor's children.

3. DESCENT AND DISTRIBUTION — ADVANCEMENT — PRESUMPTION. — Though a conveyance by a father to his daughter without consideration is presumed to have been intended as an advancement rather than a gift, the question in any given case is one of intention of the grantor to be determined from the facts.

4. DESCENT AND DISTRIBUTION—EVIDENCE OF GIFT.—Where a father conveyed the bulk of his estate to his son and one daughter, leaving a second daughter unprovided for, in the distribution of the remainder of his estate a finding that the conveyances were intended as gifts and not as advancements will be sustained by proof that the father was estranged from the second daughter.

5. LIFE ESTATE—DISPOSITION OF TIMBER.—Where a father gave a timber deed with the privilege of renewal, and later conveyed the land to his son on condition that the property revert to his estate if the son died single, the son, while single, had a right to dispose of the timber for the purpose of cultivating the land, if it was good husbandry to do so, but he had no right to give a renewal of the timber deed for 20 years.

6. LIFE ESTATE—EFFECT OF TIMBER DEED BY LIFE TENANT.—Where a father gave a timber deed to a sawmill company with privilege of renewal, and later conveyed the land to his son on condition that the land revert to the father's estate if the son died single, and the son renewed the timber deed for 20 years and died while single, the sawmill company took subject to the conditions of the deed.

7. LIFE ESTATE—EFFECT OF TIMBER DEED BY LIFE TENANT.—Where a father gave a timber deed to a sawmill company with privilege of renewal, and later conveyed the land to his son on condition that the land revert to his estate on the son's dying unmarried, and after the father's death the son renewed the timber deed for 20 years, and died while unmarried, leaving surviving him his two sisters, the son was the owner by inheritance at his

father's death of a one-third reversionary interest in the land, and the sawmill company was entitled to a one-third interest in the timber by virtue of the renewal deed.

Appeal from Union Chancery Court, Second Division; *George M. LeCroy*, Chancellor; affirmed.

*Wilson & McGough*, for appellant.

The deed made to Mittie Russell, while she was an infant, was legally delivered, and was intended to be an advancement. 51 Ark. 531; 47 Ark. 65; 45 Ark. 481. A purchase of land by a father in the name of a son is presumed to be an advancement. 52 Ark. 188. In the absence of clear evidence to the contrary, a gift of an insurance policy from a father to his daughter will be presumed to be an advancement. 68 Ark. 405. The conveyance of land to a minor at the request of the father who purchased it, constitutes an advancement. 63 Ark. 374; 69 Ark. 629; 199 N. W. 981.

*Gaughan & Sifford, C. L. Poole* and *H. S. Yocum*, for appellee.

There is no legal inhibition preventing a man from giving his property to his children, and he may prefer one over the other. Whether or not the transaction constitutes a gift or advancement must be determined from the intention of the parent. 142 Ark. 214; 152 Ark. 577. A condition inserted in a deed after the granting clause conveying a fee simple title is void. 82 Ark. 209. A receipt for rents from all of the joint lessors is sufficient to show payment under the terms of the lease. 94 Ark. 107; 134 Ark. 396; 205 S. W. 111; 178 Pac. 658.

McCulloch, C. J. Appellant instituted this action in the chancery court of Union County to quiet title to a tract of land containing ninety-seven acres, which she acquired by inheritance or gift from her father, L. C. Burgess. She also claimed title by adverse possession for the statutory period of limitations. The action was instituted against the other heirs of L. C. Burgess, who are the children of appellant's deceased sister, Eula Walton, *née* Burgess, and against the Union Sawmill

Company, a corporation which claims to hold a conveyance of the pine timber on a portion of the lands.

It appears from the pleadings and undisputed proof in the case that the land in controversy was originally owned by L. C. Burgess, who was also the owner of other lands in the same immediate locality. L. C. Burgess had three children—appellant, a daughter, and Eula Walton, another daughter, and E. D. Burgess, a son; he also had a brother named B. M. Burgess. L. C. Burgess executed a timber deed to one Starrett, conveying the pine timber on eighty acres of the land in controversy. Starrett subsequently assigned the deed to appellee, Union Sawmill Company. L. C. Burgess conveyed a tract of his land, containing 120 acres, to his daughter, Eula Walton. It appears also from the evidence that he prepared and executed a deed for another tract of 120 acres to appellant, his daughter, but there is some conflict in the testimony as to what disposition was made of the deed—whether or not it was delivered. It is undisputed, however, that the deed was either undelivered or was returned to L. C. Burgess, and that he conveyed the land to his brother, D. M. Burgess. Appellant contends that her father agreed to either give her the proceeds of the sale of the land to D. M. Burgess or to convey to her other land. This was not done, however, and there is testimony to the effect that there was an estrangement between appellant and her father.

On June 21, 1913, L. C. Burgess executed to his son, E. D. Burgess, a deed conveying the land in controversy, which said deed reads as follows:

"Know all men by these presents: That I, L. C. Burgess, of New London, Union County, Arkansas, for and in consideration of the sum of one dollar, to me in hand paid by E. D. Burgess, the receipt of which I do hereby acknowledge, and with the further consideration of the care and love I have for the said E. D. Burgess, who is my only son, do hereby grant, bargain, sell and convey unto the said E. D. Burgess, and unto his heirs

and assigns forever, the following lands lying in the county of Union and State of Arkansas, to-wit: (Here follows a description of the land in controversy). Conditioned, that if the said E. D. Burgess remains single and unmarried he shall have the rights, rents and profits of the said land when single and unmarried; if single and unmarried at death, then the said lands shall revert to the estate of L. C. Burgess. If the said E. D. Burgess marries and has a family, in addition to the rights, rents and profits of the said lands he shall — the further right to sell and convey or dispose of the said lands as he may consider proper and right. On this condition to have and to hold the same unto the said E. D. Burgess and unto his heirs and assigns forever, with all appurtenances thereunto belonging."

It appears that these several conveyances hereinbefore mentioned covered all of the lands mentioned by L. C. Burgess. There is no proof in the case that he left any other estate at the time of his death, which occurred on September 23, 1913.

E. D. Burgess took possession of the land in controversy under the deed from his father, and occupied the same until his death, which occurred on November 5, 1920. After his death, appellant took possession of the land, and has occupied the same up to the present time.

Eula Walton died September 5, 1900, leaving appellees, Clyde Pagan, Zella McClendon, Euretta Walton and C. F. Walton as her children and only heirs at law.

The timber deed executed by L. C. Burgess to Starrett was dated February 28, 1903, and it conveyed the pine timber on eighty acres of the land, and specified eleven years from the date of the deed as the period within which the timber should be removed, and provided that the time might be further extended by payment of an annual rental of twenty dollars. E. D. Burgess entered into a contract with the Union Sawmill Company on February 28, 1915, for an extension of the period for removal of the timber during a period of twenty years from the

date of the instrument, and there was paid to him by the Union Sawmill Company a consideration of $400. The Union Sawmill Company was joined as defendant in the suit in a prayer that the timber deed be canceled, and the company answered setting up the original deed from L. C. Burgess and the extension deed from E. D. Burgess, claiming title to the timber and the right to remove the same within the period specified in the contract with E. D. Burgess.

The case was submitted to the chancery court on oral testimony as well as the several documents hereinbefore referred to, and the court rendered a final decree, finding that appellant is the owner of an undivided one-half interest in the lands in controversy, and that appellees, children of Eula Walton, are the owners of the other undivided one-half, all subject to the timber rights of the Union Sawmill Company, and that the latter is the owner of the pine timber on an undivided one-third of the eighty acres of land constituting part of the lands in controversy.

Appellant has prosecuted an appeal, and contends that she is entitled to the whole of the tract of land in controversy, free of any claim of the Union Sawmill Company to timber rights, and the Union Sawmill Company has also cross-appealed, claiming that it is entitled to all of the pine timber on the land under the renewal deed from E. D. Burgess.

The first question for determination relates to the ownership of the land. All of the appellees have joined in the brief, and contend that the deed of L. C. Burgess to E. D. Burgess conveyed the title in fee, and that the renewal timber contract executed by E. D. Burgess to the Union Sawmill Company was binding on all the parties to this action who inherited the land from him. On the other hand, it is contended on the part of appellant that the deed to E. D. Burgess did not convey the title in fee, but either conveyed a life estate or a conditional fee, which reverted to the heirs of the grantor on failure of the condition. The contention of counsel for

appellees that the deed conveyed the absolute fee to E. D. Burgess is that the condition expressed in the deed is in conflict with the granting clause, and is void. They rely upon the decision of this court in the case of *Carl-Lee* v. *Ellsberry*, 82 Ark. 209, and they cite that case as controlling the present one. We do not agree, however, with counsel that the case referred to is controlling, for the framework and language of the deed are entirely different. In the present case the condition is expressed in the granting clause itself, and not merely in the *habendum,* and it is also included in the *habendum* clause. In this respect the facts of the present case fall squarely within the rule announced by this court in *McDill* v. *Myer,* 94 Ark. 615, where it was held that a condition expressed in a deed was not void unless found to be in conflict with the granting clause. Our conclusion therefore is that the deed did not convey an absolute fee.

In order to determine the present status of the title, it is unimportant whether the deed be construed as conveying merely a life estate or whether it conveyed the fee with a condition subsequent attached, for, according to the undisputed evidence, the condition stated in the deed was never performed, in that E. D. Burgess died without having married, and the title passed to appellant and appellees, the children of Eula Walton, by inheritance, and this was in accordance with the decree of the chancery court.

The contention of appellant is that the deed to Eula Walton was an advancement, and that, since appellant got nothing else from her father's estate, she is entitled to this land, because the amount of land conveyed to Eula Walton constituted her full share in her father's estate. It is urged that the conveyance by the father to the daughter without other consideration is presumed to have been intended as an advancement rather than a gift. The principle of law contended for by counsel for appellant is correct, but, after all, it is a question in any given case to determine whether the facts show that the intention of the grantor was to make an advancement

or to make a gift. In the case of *Holland* v. *Bonner,* 142 Ark. 214, we said:

"The question as to whether or not a conveyance or transfer of money or property is regarded as a simple gift, or advancement, or a sale, is to be determined by the intention of the parent. The question as to what was the intention is generally purely one of fact, to be ascertained from the circumstances of the transaction. The donor's intention is the controlling principle, and, if it can be said, from all the circumstances surrounding a particular case, that the parent intended a transfer of property to a child to represent a portion of the child's supposed share in the parent's estate, such transfer will be treated in law as an advancement. Conversely, if it appears that the ancestor intended that a gift to his child should not be treated as an advancement, such intention will prevail."

In that case it was held that the circumstances were such as to warrant a finding that the presumption of advancement was overcome, and that the parent intended the conveyance as a gift. Likewise in the case of *Latimer* v. *Moore,* 152 Ark. 577, we announced the same principle of law, and held that the circumstances, about which there was a conflict in the testimony, were sufficient to support a finding of the chancery court that the transfer of the property was intended as a gift rather than an advancement. So we conclude in the present case that the circumstances are such that we cannot say that the chancellor erred in finding that the conveyance by L. C. Burgess to his daughter was a gift rather than an advancement. The circumstances are such as reasonably warrant the inference that L. C. Burgess was dividing up his property by gifts to his several children, and that he disposed of all of his property by gift without any intention of leaving an estate from which advancements to his children should be deducted. He made a conveyance to his daughter, Eula Walton, and also to his son, and the proof shows that the other tract of land which he owned was first covered by a deed to appellant,

but that deed was either undelivered or was surrendered, and the land subsequently conveyed to the brother of L. C. Burgess. All this clearly indicates that the parent was parceling out his property by sale or gift, and was not making an advancement. Moreover, there is proof from which the chancellor might have found, and doubtless did find, that there was an estrangement which arose between L. C. Burgess and appellant, and that he had no intention of reserving any of his property for her, but intended to give it to his other children.

We conclude therefore that the decree was correct in holding that the conveyances were not made as advancements, and that the children of Eula Walton are not cut out of their inheritance of an interest in the lands in controversy.

This disposes of the question of the title to the property, and there only remains the question of the rights of appellee Union Sawmill Company. We have already disposed of the argument that E. D. Burgess had the fee and the right to convey the timber. It is further contended, however, by counsel for appellees, that, even though E. D. Burgess was merely a life tenant, or the holder of a conditional fee, his timber contract was valid as against others interested in the property. We do not agree with this argument of counsel. If Burgess was a mere life tenant, he had the right, of course, to dispose of the timber for the purpose of cultivating the land, if it was good husbandry to do so. *McLeod* v. *Dial*, 66 Ark. 10; *Rutherford* v. *Wilson*, 95 Ark. 246; *McCarroll* v. *Fall*, 129 Ark. 245; *Causey* v. *Wolfe*, 135 Ark. 9. But it is obvious from the length of time given that the intention was not to dispose of the timber in order to open up the land, but that it was merely a commercial venture, and a long period of time, twenty years, was given for the removal of the timber. This may have been called good business judgment as a commercial venture, but it is not good husbandry to give an extension of twenty years to remove the timber from land which was intended for cultivation by the owner. The effect

of the renewal contract executed by E. D. Burgess merely constituted a new sale, and it was dependent entirely upon the right or authority of E. D. Burgess to sell the timber. This contract gained no vitality from the original contract executed by L. C. Burgess. Appellee Union Sawmill Company is not in any better attitude if the deed from L. C. Burgess to E. D. Burgess be treated as a conveyance of a conditional fee, for the company took the conveyance of the timber right subject to the condition, which has failed. The Union Sawmill Company is like any other purchaser who takes title subject to a condition expressed in a deed of a prior grantor, and must abide by the terms of the deeds in the chain of title. The one-third interest in the timber awarded to the sawmill company by the chancery court is as much interest as it is entitled to under this renewal deed from E. D. Burgess, and our conclusion further is that the company was entitled to that much of the timber. Treating the deed either as conveying a life estate or as a conditional fee, E. D. Burgess was, after the death of his father, the owner by inheritance of one-third of the reversionary interest, the other interest being owned equally by appellant and the other daughter, Eula Walton. Appellant and the other heirs are bound by the timber deed to the extent that it conveyed the interest of E. D. Burgess.

We are of the opinion that the decree of the chancery court was therefore correct in every particular, and the same is affirmed.