OLIVER *v.* OLIVER.

Opinion delivered January 12, 1931.

*John F. Clifford,* for appellant.

*Lawrence Auten, Phillip McNemer* and *R. E. Wiley,* for appellee.

HART, C. J., (after stating the facts). It is conceded that chancery has jurisdiction in the assignment of dower. *Maxwell v. Autrey,* 151 Ark. 85, 235 S. W. 384, and cases cited.

It is insisted, however, that the basis of this suit is to declare a trust in favor of the estate of R. B. Oliver, deceased, in the 248 shares of stock in the Little Rock Revilo Hotel Company, and that chancery was without jurisdiction of said suit. We do not agree with counsel in this contention. The subject of the trust sought to be declared in the 248 shares of stock in the hotel was personal property; and, being personal property, the trust might be created by parol and established by parol evidence. This court has held that the statute of frauds does not extend to trusts of personal property, and that such trusts may be created and proved by parol. Of course, the evidence to establish the trust must be clear and convincing. *Scott v. Miller,* 179 Ark. 7, 13 S. W. (2d) 819.

Tested by this well-established rule, we are of the opinion that the trust in favor of the estate of R. B. Oliver, deceased, in the 248 shares of stock in the Little Rock Revilo Hotel Company, which was issued to Joe H. Oliver, was established by clear and satisfactory evi-

dence. It is true that J. H. Oliver testified that the stock was issued to him in consideration of between $15,000 and $20,000, which he loaned to his brother, R. B. Oliver. He introduced proof tending to show that between 1920 and 1921 he lived in Oklahoma and was worth at least $20,000. He also proved by one of his brothers that on a visit to Little Rock in the spring of 1924 R. B. Oliver told him that his brother, J. H. Oliver, had loaned him money and that he had paid him therefor by issuing to him stock in the Little Rock Revilo Hotel Company.

The testimony bearing on this phase of the case is very voluminous, and in some respects is somewhat ambiguous. But we are of the opinion that, when the whole transaction is considered in the light of the attendant circumstances, it is established by clear and convincing testimony that R. B. Oliver owned the Revilo Hotel. The record shows that, after he and his associates came to the State of Arkansas, he engaged in road construction work and at times made considerable amounts of money. Out of the profits of his construction work, he established and operated a hotel in the city of Little Rock known as the Revilo Hotel and also hotels in Conway and in Stuttgart. The undisputed evidence shows that from the time the Revilo Hotel on West Markham was taken charge of by R. B. Oliver in 1920, he had the exclusive management and operation of it until his death. He purchased the lots on which the hotel was situated and paid a consideration of $35,000 for them. He bought all the furniture and other furnishings which were placed in the hotel. He made all contracts for the repairs which were made on the hotel and paid the taxes on it up to the time of his death in 1928. His brother, Joe H. Oliver, had nothing whatever to do with the operation of the hotel, and did not claim any interest in it until after his brother's death. After the death of his brother, he told several people that he had no interest in the hotel.

The record does show that J. H. Oliver loaned his brother, R. B. Oliver, in about 1921, $5,000; but it also shows that this amount was repaid him. The bookkeeper

of R. B. Oliver testified that J. H. Oliver came from Oklahoma to Arkansas in 1922 and was an employee of the Oliver Construction Company at the sum of $250 per month. He had no interest whatever in the construction company and did not participate in its profits. She kept his account with the construction company; and at the time she quit as bookkeeper in 1925, R. B. Oliver owed him something like $1,900. At no time did the books show that R. B. Oliver owed him any considerable amount of money. The account of the Revilo Hotel Company was kept in the name of R. B. Oliver, who managed and operated it as his own. J. H. Oliver had nothing to do with the operation and management of it, but was only present on the day the corporation was organized and the 248 shares of stock were issued in his name. R. B. Oliver took the shares of stock on that occasion and kept them in his safe with his private papers until his death in 1928. At no time does the record show that J. H. Oliver claimed any interest in the shares of stock in the Revilo Hotel Company. Nor does the record show that J. H. Oliver made any profits in road construction work after he came to the State of Arkansas in 1922. On the other hand, it tends to show that he was dependent upon his brother, R. B. Oliver, for employment, and he told the son-in-law and daughter of R. B. Oliver after his death that he did not know what he would do now.

One witness testified that he was with R. B. Oliver at a club house on a hunt sometime prior to his death, and that R. B. Oliver told him in the presence of two other witnesses who were named by him that the stock in the Revilo Hotel belonged to J. H. Oliver. The witnesses named, however, denied that R. B. Oliver made any such statement in their presence. They admitted that they were all together on the hunt. After considering the whole record, we have come to the conclusion that it is established by clear and convincing testimony that the 248 shares of stock belonged to R. B. Oliver, and were held in trust for him by J. H. Oliver. It is true that the record does not disclose why the shares of stock were

issued in the name of J. H. Oliver, but it does show plainly and unequivocally that R. B. Oliver paid for the whole of the hotel property, including the furnishings in it, and exercised complete and exclusive control over it until his death. J. H. Oliver at no time made any claim to any interest in it and gives no satisfactory and definite account of any money advanced by him to R. B. Oliver except the $5,000 which was repaid to him.

It is next contended that the court had no jurisdiction to try the title to the steam shovels and Ford trucks in this proceeding. It is well settled in this State that, where a court of equity acquires jurisdiction of a matter in controversy, it will retain the case for the settlement of all rights between the parties growing out of and connected with the subject-matter, whether legal or equitable, so as to do complete justice. Having taken jurisdiction of the case for the equitable relief upon any phase of it, equity will retain the cause to administer the legal and equitable relief. *McGaughey* v. *Brown*, 46 Ark. 25; *Home Life Ins. Co.* v. *Masterson*, 180 Ark. 170, 21 S. W. (2d) 414; and *Held* v. *Mansur*, 181 Ark. 876, 28 S. W. (2d) 704.

But little need be said upon the facts upon this branch of the case. R. B. Oliver and D. B. Hill had formed a partnership as D. B. Hill & Company. The firm had sold to J. H. Oliver the steam shovels and Ford trucks in question, and had taken his title notes for the payment of the purchase money. There is a dispute between D. B. Hill, the surviving partner, and J. H. Oliver as to the payment of the purchase price, but the chancellor was justified in finding from the testimony and from the attendant circumstances that J. H. Oliver owed the amount found to be due on the balance of the purchase price of the property, and that the plaintiff was entitled to her dower interest therein.

We find no reversible error in the record, and the decree will therefore be affirmed.