PERDUE *v.* PERDUE.

4-5555                                    130 S. W. 2d 703

Opinion delivered July 3, 1939.

*Claude E. Love,* for appellants.
*Floyd Stein,* for appellees.

HOLT, J. Appellants bring this appeal from the Union chancery court, first division.

J. Madison Perdue died intestate in 1937, owning eighty acres of land in Union county, Arkansas, and left as his sole surviving heirs: Harry Perdue, Maggie Deason, Cammie Deason, Clara Wallace, S. M. Perdue, J. W. (Walter) Perdue, John A. Perdue, and Mrs. C. F. Enis.

In 1926, J. Madison Perdue executed a warranty deed to one of his children, J. W. (Walter) Perdue, conveying to him twenty acres of land, and at about the same time gave by warranty deed to John A. Perdue, another son, a twenty-acre tract.

On August 26, 1938, appellants, Harry Perdue, Maggie and Cammie Deason, Clara Wallace, S. M. and John A. Perdue, and Mrs. C. F. Enis, filed suit against J. W. (Walter) Perdue, setting up in their complaint, among other things, that they became on the death of their father, J. Madison Perdue, tenants in common and owners of all the lands of which their father died seized and possessed; that prior to his death their father had conveyed to the defendant, J. W. Perdue, twenty acres of land as an advancement to him in lieu of, and substitution for, his right of inheritance in the estate of the said J. Madison Perdue, and likewise a similar conveyance of a twenty-acre tract to John A. Perdue, for the same purpose, and that said conveyances were given for and accepted by each in lieu of their right of inheritance, and that the said John A. Perdue admits this allegation of appellants' complaint to be true and makes no claim for any interest in said estate.

They further allege that appellee, Walter Perdue, is wrongfully asserting some interest in the property of which the said J. Madison Perdue died seized and possessed, and prayed they be declared the owners of all the lands described, of which the said J. Madison Perdue died seized and possessed, and that their title be quieted and confirmed against the defendant, J. Walter Perdue.

To this complaint defendant answered, admitting the allegations thereof except that he denied that at the death of his father, J. Madison Perdue, the land in question descended to appellants to the exclusion of his (appellee's) interest therein, and alleges that he, appellee, is a co-tenant along with appellants.

He further set up the defense of statute of frauds and alleged that at the time he married, some thirty years ago, his father deeded him the twenty-acre tract of land in question, as a gift; and that it was not intended to be and was not considered, by his father, as an advancement to him or in lieu of his right of inheritance in his father's property.

The chancellor found "that the said J. W. (Walter) Perdue is a tenant in common with the plaintiffs in this case, and has the same right, claim, interest and equity in the property left by the said J. Madison Perdue as that of the plaintiffs, and that the plaintiffs and defendant are tenants in common in owning said property described in the plaintiffs' complaint and set out in this decree. . . . That J. Madison Perdue did convey to the defendant, J. W. (Walter) Perdue (twenty acres of land) during the year of 1904, and that the conveyance of said land was not an advancement and was not deeded to the said J. W. (Walter) Perdue in lieu of his inheritance, or in substitution for his right of inheritance in the estate of the said J. Madison Perdue; and that the complaint of the plaintiffs filed herein should be dismissed for the want of equity."

From the judgment on this decree comes this appeal.

We think the only question presented by the record for review here is: Was the twenty-acre tract of land given to appellee, J. W. (Walter) Perdue, in 1904 and later conveyed to him by warranty deed in 1926 by his father, J. Madison Perdue, an advancement?

We think the preponderance of the testimony shows that it was an advancement and so intended to be by J. Madison Perdue, and that the chancellor erred in finding to the contrary.

Appellee urges that the judgment should be affirmed for failure of appellants to comply with Rule IX of this court. While we agree that better practice requires that the testimony should have been more fully abstracted, on the issue here presented, we think the abstract sufficient.

We set out briefly some of the testimony as given by the eleven witnesses who testified on behalf of appellants:

H. G. Pendleton testified that about twenty years ago he had a conversation with J. Madison Perdue. "Q. Did he make any statement about giving Walter his interest in the estate. A. He says I have twenty acres apiece for them, and I have given John and Walter theirs, that is the words he said. . . . Q. He didn't tell you at the time he was going to disinherit Walter and John and that they couldn't participate in anything he left, did he? A. He didn't say anything about that; he said he had twenty acres of land apiece for his children, and I heard him say he had given Walter and John theirs time and time again, when I first moved there."

Bill Blackman testified: "Q. Did you ever hear J. Madison Perdue in his lifetime make any statement concerning twenty acres of land he had given to each, John and Walter? . . . A. Yes, sir. Q. What was that statement? A. Well, he just said to me he had given Walter twenty acres of land for his part. Q. What did he say about John's? A. Well, he said he had give John his part. Q. Are you related to the Perdues in any way? A. No, sir."

W. J. McNeil testified: "Q. J. Madison Perdue told you it was Walter's land, that he had given him twenty acres? A. Yes, sir. Q. Did he say anything to you at any time during your conversations with him as to whether or not this was Walter's part of the estate, this twenty acres? A. He told me he gave Walter the twenty acres and gave John his twenty acres."

B. W. Perdue, brother of J. Madison Perdue, testified as follows: "Q. During your brother's lifetime did he ever talk to you about the land he had given Walter and John Perdue? A. Yes, sir. Q. What did he say about it? . . . A. He said he had given John and Walter twenty acres of land as their part of the land at that time, and later on he sold some of the land and he didn't have that much for the other children."

Jim McKay testified: "Q. Did you have any conversation with J. Madison Perdue in his lifetime about the land he gave Walter? A. I did. Q. What was the occasion for that conversation? . . . A. I came to El Dorado, Christmas, 1914, to spend the Christmas, he was my uncle, at that time I lived at Locust Bayou, and we got to talking about his land, and he told me how much he had, and he said he had give Walter twenty acres, his part of the estate, and he intended to give the rest of the children that much as they become married, and in the spring of 1915 I moved here to study law and I went to his home on frequent occasions and he told me about the same thing along about April, 1915."

John Perdue, a brother of appellee, testified: "Q. Did you ever hear your father say anything about Walter having received his part of the estate? A. Well, he said there was twenty acres apiece for all of us kids and he gave us that. . . . Q. Since he executed that deed and gave Walter twenty acres and gave you twenty, do you claim any interest in the estate now? A. None whatever."

J. Walter Perdue, appellee, testified in his own behalf: "Q. In what way did you accept this twenty acres of land? A. As a gift. I told him, I says I am going to marry and he says, well, I will give you this twenty acres of land. Q. Twenty years later you got a deed to it, and that was some ten years before he died. Tell the court about procuring the deed. A. Well, he put it off from time to time, I knew he would make me a deed any time I got ready, and he married the second time before I did, but he married the third time and after he stayed with his wife about a year and they separated, he went and got a divorce, and as soon as he got it he made me a deed to the twenty acres." He further testified that when his father deeded him the land in 1926 he made no mention that it was to be in lieu of his inheritance and further: "Q. You say he gave you this land in 1906? You didn't pay him anything for it, did you? A. No, he gave it to me. . . . Q. I asked you what was the consideration for this deed? In 1906? A. There wasn't any considera-

tion. Q. What was the consideration in 1926? A. I think I gave him a dollar or paid for the deed; so far as paying him anything, I don't think I did.''

As reflected by this record, appellee himself admits that the twenty-acre tract of land in question was a gift to him, during his father's lifetime.

It has long been the established rule of law in this state that a gift of a considerable portion out of the body of the estate from a parent to a child during the lifetime of the parent is *prima facie* evidence of an advancement; that it was so intended, and that this presumption must be overcome by a preponderance of the testimony.

The rule is well stated in Volume 1, American Jurisprudence, p. 766, § 116, as follows: "It is the general rule that, in the absence of clear and convincing evidence to the contrary, it will be presumed that a parent who during his lifetime makes a substantial gift to a child intended such gift to be an advancement; and hence it is often stated that a gift to a child or an heir by an ancestor in his lifetime is *prima facie* an advancement. The rule owes its almost universal adoption to the strength of the equitable doctrine which assumes that a parent desires to distribute his estate equally among all his children, in accordance with a natural equal affection for each child."

In the case of *Jackson* v. *Richardson,* 182 Ark. 997, 33 S. W. 2d 1095, this court said: "The party asserting that it was the intention of the donor to make an advancement makes a *prima facie* case where he shows that the facts surrounding the supposed advancement are such that a presumption arises that the gift by the donor was an advancement. It then becomes necessary for the party claiming that the transaction was not an advancement to introduce evidence to overcome this presumption. In this state the presumption is that a conveyance or gift by the father to his daughters is an advancement. *Eastham* v. *Powell,* 51 Ark. 530, 11 S. W. 823. . . . The evidence necessary to overcome the presumption of an advancement, in a case like this, and prove a resulting trust, must not only be distinct and credible, but preponderate."

Again in *Stacy* v. *Stacy*, 175 Ark. 763, 775, 300 S. W. 437, the rule is clearly stated in the following language: "An advancement is a gift by a parent to a child in anticipation of that which it is supposed the child will be entitled on the death of the parent. The question as to whether or not a conveyance or transfer of money or property is regarded as a simple gift, or advancement, or a sale, is to be determined by the intention of the parent. The question as to what was the intention is generally purely one of fact to be ascertained from the circumstances of the transaction. The donor's intention is the controlling principle, and, if it can be said from all the circumstances surrounding a particular case that the parent intended a transfer of property to a child to represent a portion of the child's supposed share in the parent's estate, such transfer will be treated in law as an advancement."

On the whole case we are of the view that the preponderance of the testimony reflects a clear intention on the part of the father, J. Madison Perdue, that the twenty acres deeded to appellee, was an advancement, and the chancellor erred in holding otherwise.

The decree is, therefore, reversed and remanded with directions to the trial court to enter a judgment declaring appellants to be the owners of the lands in question, of which J. Madison Perdue died seized and possessed, and quieting and confirming their title thereto.