Hand v. Mitchell, Administrator.

4-7849                                     193 S. W. 2d 333

Opinion delivered April 1, 1946.

*Hardin, Barton & Shaw,* for appellant.

*W. A. Bates, Bryan Bates* and *Charles I. Evans,* for appellee.

McHaney, J. Appellees, who are the administrator of the estate of E. M. Fuller, deceased, the widow and the daughter of said E. M. Fuller, brought this action against appellants who, in addition to Hand, are W. E. Judy, Fuller-Judy Chevrolet Company, Fuller-Judy Hardware Company and Citizens Gin Company, for the purposes, among others, to have appellant, Hand, declared to hold certain shares of the capital stock of Fuller-Judy Chevrolet Company, hereinafter called the Chevrolet Company, and of the Fuller-Judy Hardware Company, hereinafter called the hardware company, as trustee for the estate of E. M. Fuller.

The decree from which is this appeal holds "that defendant, Grady Hand, holds the E. M. Fuller stock in Fuller-Judy Chevrolet Company as trustee for the estate of E. M. Fuller, deceased; that Hand is entitled to decree for one thousand dollars with 6 per cent. interest from January 4, 1938, which the administrator of the E. M. Fuller estate is directed to pay into court for Hand."

Also the court found and held that Hand "holds the stock of E. M. Fuller and W. E. Judy in Fuller-Judy Hardware Company as trustee; that he paid five hundred dollars in settlement of the debt of the hardware company, Fuller and Judy, personaly, to Moody Cotton Company of Galveston, Texas, which released the hardware company stock. The hardware company, Judy and the administrator—are directed to pay said sum with six per cent. interest thereon from June 1, 1938, into the court for defendant, Hand."

This is all that was decided in the decree of the court of May 21, 1945. "All other questions in the case" were expressly reserved for future consideration. Therefore, appellant, Hand, is the only appellant directly interested in the result of this appeal. He claims to have bought the Fuller stock in the Chevrolet Company outright, for his own use and benefit and not for the benefit of Fuller, and makes the same claim as to the hardware company stock, owned by both Fuller and Judy. Mr. Fuller died intestate on July 9, 1942, and this suit was not filed until October 28, 1942.

The transactions out of which this litigation grew originated probably in 1929 or 1930. E. M. Fuller and W. E. Judy were jointly interested in four or more business corporations, including the hardware company and the Chevrolet Company. They owned practically all of the capital stock of the hardware company equally. In the Chevrolet Company, Fuller owned 500 shares, or 50 per cent. of its capital stock, Judy owned 250 shares, or 25 per cent., and Hand owned the other 250 shares or 25 per cent., the par value being $25 per share.

The hardware company bought, probably in 1929 or 1930, the date not being certain, a large amount of cotton which purchases were financed by and the cotton shipped to Moody Cotton Company of Galveston, Texas. The price of cotton declined, and as a result the hardware company became indebted to Moody Cotton Company in a large sum of money, in excess of a half million dollars. Fuller and Judy personally indorsed this debt to Moody

Cotton Company and also pledged their stock in the hardware company as security therefor. When cotton continued to decline Moody demanded additional collateral, sent a representative to Waldron where Fuller, Judy and Hand resided, and Fuller agreed to pledge his 500 shares in the Chevrolet Company, if Judy would pledge an equal amount, his own 250 shares and the 250 shares owned by Hand, his son-in-law. Hand agreed to let his father-in-law, Judy, have his stock for this purpoose, and all the outstanding stock of the Chevrolet Company was thus pledged to Moody. In addition to the Moody indebtedness, the hardware company was largely indebted to others, and was hopelessly insolvent. Efforts were made in 1936 by Hand and Mr. Piles, the banker for all of them, to adjust or settle the indebtedness to Moody. They made a trip to Galveston for this purpose, but nothing was accomplished. In 1937, Moody sent its claim to an attorney in Ft. Smith, Mr. Barry, for collection. After a thorough investigation by Mr. Barry with all the parties, including the banker, Mr. Piles, and by authority of Moody, Barry agreed to and did release the Chevrolet Company stock to Hand on the payment of $2,000. This was done on January 4, 1938, by a written agreement, signed by Fuller, Judy and Hand, and certificate No. 1 for 500 shares of said stock in the name of E. M. Fuller was delivered to Hand, bearing the assignment of Fuller in blank. Presumably it was so signed when the certificate was pledged to Moody. Later negotiations with Mr. Barry resulted in the transfer to Hand of all of the stock in the hardware company held by Moody for a consideration of $500 paid on June 1, 1938.

We think the trial court was justified in holding that Hand held the stock of Fuller in both these corporations as trustee for Fuller. Mr. Piles, the banker, says the reason for the transfer to Hand was that, when the Chevrolet stock was transferred to Hand, Fuller was still indebted to Moody not only by his personal indorsement, but by his pledge of his stock in the hardware company, and that he was also indebted to others in very substantial sums, and that it was thought best by all the parties

that said stock should be in the name of Hand. So, also, as to the hardware company stock that was later transferred to Hand by the payment of $500, a nominal sum as compared to the whole debt due Moody, at which time both Fuller and Judy were released personally on said indebtedness. This smacks rather strongly of a scheme to defraud other creditors, but none of them are here complaining, and Hand does not raise the question if he could.

The rule in this state is well settled that a trust in personal property may be created by parol and established by parol evidence, and that the statute of frauds does not extend to trusts of personal property, but that the evidence to establish the trust must be clear and convincing. *Scott* v. *Miller,* 179 Ark. 7, 13 S. W. 2d 819; *Oliver* v. *Oliver,* 182 Ark. 1025, 34 S. W. 2d 226; *Laster* v. *Oldham,* 189 Ark. 5, 69 S. W. 2d 1078.

We think the evidence and the circumstances measure up to this requirement. From the organization of the Chevrolet Company, Judy had been its president, Fuller its vice-president, and Hand its secretary, and they each were allowed and drew a small monthly salary of $25, $50 and $25 respectively. This arrangement continued to exist after January 4, 1938, the date all the stock in the Chevrolet Company was transferred to Hand, to the date of the death of Mr. Fuller in July, 1942. There has never been any question about the solvency of the Chevrolet Company. On the very day this stock was transferred to Hand, it had a credit balance on deposit in the bank of Mr. Piles, a sum in excess of $2,000, or a sum more than sufficient to redeem this stock. In August, 1938, Mrs. Hand, wife of Grady, and daughter of Judy, who was and had been since its organization the bookkeeper for the Chevrolet Company, prepared a financial statement of said company for the bank which was signed by Grady Hand, and which showed the same officers as listed above and a total of tangible assets of $17,000, but did not list or value its intangibles, such as going-concern value or the value of its Chevrolet ''franchise.'' The

stock was probably worth par at that time, but if we consider only the value of tangibles listed, the stock of Mr. Fuller was worth $8,500, and it required an expenditure by him of only $1,000 to redeem his stock. When Hand redeemed all the stock for $2,000, his stock redeemed at the same time was worth $4,250 on the same basis.

Another significant fact is that, at the end of 1940 or 1941, Hand had caused entries to be made on the books of the Chevrolet Company showing payment to Mr. Fuller of something over $1,800, and smaller amounts to himself and Judy. These were false entries as the audit of the books showed that these payments were not made, that check stubs were written to show such payments, but the checks were never written, and the bank account was long by these amounts, about $3,000. Hand admitted that this was done to evade the payment of income taxes, as they showed on the books as expenses.

There are other facts and circumstances to show that Hand did not acquire the stock either in the Chevrolet Company or in the hardware company with the intent at the time to claim it as his own. There is no evidence in the record that he ever so claimed to Mr. Fuller in his lifetime. There is evidence and very persuasive evidence by Mr. Piles that, some months before Fuller's death, he, Fuller, Judy and Hand drove out into the country from Waldron to try to work out a settlement of the differences among Fuller, Judy and Hand; that a settlement was worked out and agreed to by all of them, the details of which are not here important, but it was to be carried out through Mr. Piles; that pursuant thereto Fuller and Judy deposited checks with Mr. Piles for the sums they were to pay, but that Hand failed to deposit with Mr. Piles the stock certificates in the two companies held by him; and that the agreement was never performed because Hand failed to carry out his part of it.

When we consider these facts and circumstances, and others that might be detailed, we think they speak louder and more forcefully than the testimony of Hand and his witnesses that his acquisition of this stock for

the consideration paid was for his own use and benefit. As said by the late Chief Justice HART, in *Clark-McWilliams Coal Co.* v. *Ward,* 185 Ark. 237, 47 S. W. 2d 18, which was a case somewhat similar to this: "It is true that H. G. Clark and N. R. Clark flatly contradict the testimony of Ward (that a deed absolute on its face was intended as a mortgage), and it is earnestly insisted that their testimony is entitled to as much credence as the testimony of Ward. Be that as it may, the testimony of Ward is strongly corroborated by the surrounding circumstances. These circumstances are stronger than the words of men and point unerringly to the fact that the transaction was intended between the parties to be a security merely for debt and not an absolute conveyance of the property."

This suit comes at a time when the lips of Mr. Fuller are closed by death. But the circumstances surrounding the transaction still survive and "are stronger than the words of men."

The decree is correct. It does justice and equity. It reimburses Hand for the small amount of money advanced by him with interest. It requires him to surrender the stock acquired by him to the administrator, the widow and daughter of Fuller, and it is accordingly affirmed.