MILUM v. MILUM

5-3404                                           385 S. W. 2d 658

Opinion Delivered January 11, 1965

*Moore & Brockmann,* for appellant.

*Ben C. Henley,* for appellee.

SAM ROBINSON, Associate Justice. Roy W. Milum, Sr. died on May 9, 1963. The administrators of his estate, William J. and Roy W. Milum, Jr., sons of the deceased, filed an inventory. Listed among the assets of the estate were Calico Rock Bonds valued at about $12,000, and Nettleton School District Bonds of the value of about $52,000.

Also surviving the deceased was another son, John C. Milum, Sr. and a daughter, Mary Milum Reed. Marian

Milum, wife of John C. Milum, Sr., filed exceptions to the inventory of the estate on behalf of her four minor children, John C. Milum, Jr., Rebecca Lee Milum, William Roy Milum and James Wesley Milum. Mrs. Milum claimed that the aforesaid bonds had been given in trust to her husband, John, for her minor children and that the bonds are, therefore, not assets of the estate. Upon a trial of the issues, the Probate Court held that the bonds are assets of the estate. The children, by their mother, Marian Milum, have appealed.

Subsequent to the death of Roy C. Milum, the heirs found among his effects, statements from dealers in investment securities showing that he had purchased bonds of Calico Rock in the sum of $12,000 and had purchased Nettleton School District Bonds in the sum of $52,400. There was also a memorandum that the bonds had been placed in Box 304 of the Commercial Bank. The key to the lock box at the Commercial Bank was among Roy C. Milum's effects.

After William J. Milum and Roy W. Milum, Jr. had been appointed administrators, they, along with their brother, John C. Milum, Sr., and their sister, Mary Milum Reed, and an attorney, went to the bank to open the lock box. All of those present expected to find the bonds in the lock box, except John C. Milum, Sr. He knew the bonds were not there. He pretended, however, to be as much surprised as the others at not finding the bonds in the lock box. A few days later, while the administrators were preparing to take further steps in an effort to locate the bonds, John C. Milum told them that they need look no further; that he had the bonds; that they had been given to him by their father for the use and benefit of his (John's) children; that the bonds were to be used for the education of the children. Thus, there arose the issue of whether the bonds belonged to John in person, or as trustee for his children, or did they belong to the estate.

The finding of the Probate Court that the bonds were delivered to John by his father as an advancement is sustained by a preponderance of the evidence, although

there is some evidence to the contrary. John had the bonds. He stated that his father had given them to him to be used for the education of John's four children. He further testified that his father had given him specific instructions on cashing the bonds as they became due and how the proceeds should be handled, and that he had carried out his father's instructions in that respect to the letter.

But the evidence also shows that at the time he turned the bonds over to his son John, Roy was personally involved in a divorce proceeding. His then.wife was not the mother of his children. The testimony of Lloyd Shouse, attorney for Roy Milum at the time of the divorce, can be construed to the effect that Roy gave the bonds to John as an advancement. Roy was nearly 80 years of age at the time and was worth a considerable sum. He died about nine months after the divorce was granted to his wife.

The inventory of the estate shows a valuation of about $425,000.

There is no evidence at all indicating that Roy had ever favored any of his children over the others, although, subsequent to his divorce, two of his children had provided an apartment for him at their homes in Harrison. Roy had other grandchildren besides John's children. It appears that some of them had finished school and Roy had not helped with their education. One son was in debt to the extent of about $10,000 for money he had borrowed to educate his daughter.

A gift of a large portion of an estate from a parent to a child during the lifetime of the parent is prima facie an advancement. The court said in *Perdue* v. *Perdue,* 198 Ark. 657, 130 S. W. 2d 703: "It has long been the established rule of law in this state that a gift of a considerable portion out of the body of the estate from a parent to a child during the lifetime of the parent is prima facie evidence of an advancement; that it was so intended, and that this presumption must be overcome by a preponderance of the testimony." See also *Russell* v.

*Pagan,* 167 Ark. 143, 267 S. W. 573; *Jackson* v. *Richardson,* 182 Ark. 997, 33 S. W. 2d 1095; *Neal* v. *Neal,* 194 Ark. 226, 106 S. W. 2d 595; *Clement* v. *Blythe,* 220 Ark. 551, 248 S. W. 2d 883, 31 A. L. R. 2d 1033.

The conduct of John after his father died, and his testimony in Probate Court did not overcome the prima facie case that the bonds were turned over to him by his father as an advancement.

A short time after Roy's death, all the heirs were gathered together, along with an attorney. Assets of the estate were discussed, including the bonds. All of the heirs, except John, thought the bonds were in the lock box, and John did not say one word indicating that Roy had given the bonds to him or turned the bonds over to him in trust for his children. Later, when he testified, John attempted to explain his conduct by saying that he remained silent about having the bonds because he had promised his father that he would tell no one, and that he wanted to "search his soul", although it appears from his testimony that he had previously told at least three people of his version of the transaction.

In the circumstances it cannot be said that the evidence to establish a trust in personal property comes up to the high standard required by law. *Scott* v. *Miller,* 179 Ark. 7, 13 S. W. 2d 819; *Hand* v. *Mitchell,* 209 Ark. 996, 193 S. W. 2d 333; *Kelley* v. *Northern Ohio Co.,* 210 Ark. 355, 196 S. W. 2d 235; *Blalock* v. *Blalock,* 222 Ark. 299, 258 S. W. 2d 891.

Appellant argues other points dealing mainly with the admissibility of evidence. We have examined each point and find no error.

Affirmed.

Ward and Holt, J. J., not participating.