Davis *v.* Adams.

5-1912                                          328 S. W. 2d 851

Opinion delivered November 16, 1959.

*J. Wesley Sampier,* for appellant.

*Floyd L. Rees,* for appellee.

CARLETON HARRIS, Chief Justice. This is an appeal from an order of the Probate Court removing appellant as administratrix in succession of her deceased husband's estate, and subsequently appointing another administrator in succession.

W. K. Davis died testate in Benton County on March 12, 1951, leaving his entire estate to his widow, Vida Smith Davis, appellant herein.[1]  The record before us reflects that on August 26, 1955, the said Vida Smith Davis filed a petition requesting that she be appointed personal representative; however, she never qualified, and was never issued Letters Testamentary.  On January 17, 1957, William Linton Davis, a son of the deceased, was appointed Administrator With the Will Annexed,

---

[1] The Will did not designate an Executor or Executrix.

posted bond, and received Letters Testamentary. On April 11, 1957, appellant obtained the discharge of William Linton Davis by virtue of his disqualification (Davis was a non-resident of this state). Appellant was appointed administratrix in succession on said date, but did not make bond ($1,000 bond was required), never received letters of administration, has filed no reports, nor taken any action as administratrix.

Approximately a week before obtaining her own appointment (April 5, 1957), and while William Linton Davis was still serving as administrator, appellant entered into a written contract, in her own individual capacity, with A. V. Adams, wherein it was agreed "that seller has sold and agrees to convey" certain described real estate located in Benton County to A. V. Adams and wife (two-thirds interest), and Sophia Eckert (one-third interest). The agreement sets out the purchase price as $7,000, acknowledges that the buyer has paid the sum of $300, (which sum entitles the buyer to the use of the land for a term of one year in the event that the seller should fail to tender within a reasonable time the deeds and abstract of title, and buyer should elect to terminate the agreement) and contains the following provisions:

"It is understood between the parties that the lands herein agreed to be conveyed by the Seller were the property of W. K. Davis, now deceased, who was the husband of the seller, and whose estate is now in process of administration in the Probate Court of Benton County, Arkansas, and that the buyer shall not be required to accept a conveyance of said title until said administration is closed and the title to said real estate is conveyed to the buyer and the other person or persons to whom buyer has agreed to convey the same by the person or persons in whom the title to said real estate is vested. It is understood that to meet these requirements, a period of some eight months may be required. In the meantime, the buyer shall be permitted to occupy and use said land without payment of rent other than the said sum of $300.00, and seller shall not be considered to be in default while said necessary delay occurs to wind up the

administration of said estate. But seller shall be required to comply with her agreement within a reasonable time after the close of the administration of said estate." On November 6, 1958, Adams filed a petition in the Benton County Probate Court praying that the court issue an order directing Mrs. Davis to appear to show cause why she should not be removed as administratrix and attaching a copy of the contract entered into between appellant and Adams. Mrs. Davis responded, denying that any cause existed for her removal, and further alleging that petitioner was not "an interested person" within the meaning of the provisions of § 62-2003, of Ark. Stats. (1947) Anno., and accordingly had no right to file the petition. A second petition was filed by Adams on November 13th, enlarging upon the original petition. On December 12th, the "show cause" citation came on for hearing, at which time counsel for the administratrix requested that the hearing be continued because the administratrix was physically unable to attend court.[2] The matter was continued until December 18th, at which time the attorney for the administratrix appeared with a written statement from Dr. C. S. Wilson, M.D., wherein it was stated that Mrs. Davis was in ill health, and that she "is also a subject of the worry type to a degree that a call to 'Court' is a hazard to her health." The court found that Mrs. Davis should be removed as "Administratrix in Succession with Will Annexed of the Estate of W. K. Davis, because she has failed to furnish bond and qualify as such Administratrix as required by law and for the further reason that her health would be impaired if she was required to appear in Court or perform the other duties pertaining to the administration of said estate"; entered its order removing Mrs. Davis, directed her to file an accounting to that date, and sub-

[2] The Court's Order, with reference to this proceeding, found "That on December 12, 1958, the attorney for said Administratrix appeared in open Court and requested that said hearing be continued because the said Administratrix was too nervous and physically unable to attend Court, and introduced evidence by Catherine Key Davis, a daughter of said Administratrix to the effect that the citation into Court had caused said Administratrix to become very nervous and sick for several days, and that the Administratrix was physically unable to be present in Court on said date."

sequently appointed James T. McDonald of Rogers as administrator in succession. From the order removing Mrs. Davis as administratrix, and the order naming McDonald administrator in succession, appellant brings this appeal. For reversal, appellant relies upon two points, as follows:

"Point 1.

The Probate Court is not the appropriate forum, and these are not the appropriate proceedings, whereby the Appellee may enforce whatever rights he may have acquired, by Contract, against the Appellant as an individual and not against her as the Personal Representative of this Estate.

Point 2.

Even though the Probate Court has the power, on its own motion, to remove Vida Smith Davis as the Administratrix of this Estate, on technical grounds, still no useful purpose could be served, at this late date, by her removal and the appointment of an Administrator in Succession, to go through the idle motions, at considerable expense, of formally winding up the Estate and delivering the assets thereof to Vida Smith Davis, the sole beneficiary under the Will, there being no claims pending, and the time for filing claims having long since expired, and the heirs of the deceased having agreed to the provisions of the Will."

We proceed to a discussion of each point in the order named.

## I.

We, of course, agree that the Probate Court is not the proper forum to enforce contractual rights, but this Probate proceeding was apparently instituted only as a necessary preliminary to the commencement of a Chancery suit for specific performance. The contract provides "but seller shall be required to comply with her agreement within a reasonable time *after the close of*

*the administration of said estate.*"[3] Accordingly, any present suit to enforce specific performance might well be met with the defense that administration had not been completed on the estate; in such event, any alleged rights of Adams under the contract might well "dangle" indefinitely, for Mrs. Davis, if she desired to avoid performance of the contract, or for any other reason wanted to keep the estate open, would certainly be in a position to do so. It would appear that the closing of the estate is a condition precedent to any action seeking to enforce alleged rights under the agreement.

## II.

Appellant points out that there are no creditors; the time for filing claims has expired, and the heirs have agreed to the provisions of the will; in other words, there is no necessity for administration. It is further pointed out that this will was not admitted to Probate until more than five years after the death of the deceased. From appellant's brief: "Now the appointment of William Linton Davis was nearly six years after the death of the testator on March 12, 1951, at which time it was too late, under Ark. Stat. 62-2125, for the Will to be admitted to Probate." These contentions cannot be here maintained, for the propriety of opening the estate has never been questioned by any pleading, or objection, to the Probate Court. The petition of William Linton Davis seeking probate of the will recites: "The wife of W. K. Davis has heretofore filed her petition to be appointed administratrix of the estate but over a year has elapsed since said petition was filed and no action has been taken upon it. Vida Smith Davis is now 78 years of age and is too feeble to administer said estate. Your petitioner is a son of the decedent and wishes to be appointed administrator in order that he may conserve the estate for his mother and her heirs after her death." The order admitting the will to Probate, which found "there is need of administration being had", and naming William Linton Davis as Administrator with the Will Annexed, was apparently uncontested. On April

[3] Emphasis supplied.

11th, appellant filed her petition in which she alleged that William Linton Davis was a non-resident and asked that she be named administratrix in succession. It is noted that none of the matters now contended were raised in that petition. She did not allege that the estate was improperly opened; that there were no creditors; no need for administration, and certainly, it does not appear there was any more need of administration at that time than at present. To the contrary, appellant invoked the aid of the court, asking that she be permitted to serve as administratrix of the estate. Having requested the court to appoint her, appellant cannot now be heard to complain that the court was without power to make such appointment. This is in accordance with general principles of *estoppel*. As stated in *Corpus Juris Secundum,* Vol. 21, § 108, page 162. "Save where the court is completely without jurisdiction of the subject matter, a party will be *estopped* to question the court's jurisdiction if he invokes it, * * * or accepts benefits resulting from the court's exercise of jurisdiction."

A substantial part of appellant's brief, and oral argument before the court, relates to her contention that Adams is not "an interested party" as provided by § 62-2003k, Ark. Stats. (1947) Anno.; that he is accordingly without right or authority to maintain this action. The section provides as follows:

"k. 'Interested persons' includes an heir, devisee, spouse, creditor or any other having a property right or interest in or claim against the estate being administered, and a fiduciary."

While this Court has never had occasion to define the term "interested party" under this section of the Probate Code, *i.e.*, construe the phrase "any other having a property right or interest in", we are of the opinion that this litigation does not present the appropriate set of facts to enable, or require, the formulation of a clear-cut definition. If Mrs. Davis had qualified by making the required bond—if her physical competency to serve had been established—and she had thereafter been removed as a result of the petition by Adams—the ques-

tion would be squarely before the Court. Likewise, if the Probate Court had not removed Mrs. Davis, and Adams had perfected the appeal—the question would be properly before us. But those conditions do not exist. The trial court removed appellant because she had failed to furnish bond and qualify; further, because the court found that her health would not permit her to perform the duties pertaining to the administration of the estate. While, of course, the matter was called to the attention of the court by Adams, the trial court had full authority to remove Mrs. Davis on its own initiative. The record before us clearly justifies this removal. In fact, the court might well have been derelict in its duty if it had not removed her, for § 62-2218 provides:

"If at any time a personal representative fails to give a bond as required by the court, or, if no bond be required, fails to file written acceptance of his appointment within the time fixed by the court, *some other person shall be appointed in his stead.*[4] If letters have been issued, they shall be revoked."

Section 62-2203 also sets forth grounds for removal, including "unsuitable or incapable of discharging his trust," or "failed to perform any duty imposed by law or any lawful order of the court * * *." It is undisputed that Mrs. Davis did not make bond as required by the court, and has not qualified to receive Letters. Since we have concluded that the court's order of removal was entirely justified, it makes little difference as to what prompted the court to make the inquiry, or enter the order. The court could have taken this action upon being informed by the clerk that Mrs. Davis had never qualified, or by ascertaining in any other manner that its order had not been complied with. Our views in this connection, are somewhat expressed by the Supreme Court of Massachusetts in the case of *Quincy Trust Co.* v. *Taylor*, 317 Mass. 195, 57 N. E. 2d 573. There, Jane Taylor was appointed executrix of the will of her deceased husband. There was no creditor other than the Quincy Trust Company, which held four mortgage notes.

---

[4] Emphasis supplied.

The company filed a petition for the removal of the executrix on the ground, among others, that she was "evidently unsuitable for the discharge of said trust." The executrix filed a motion to strike the appearance of the Quincy Trust Company on the ground that it had been paid and was no longer a creditor. The trial court refused to grant the motion, and removed the executrix. In affirming the action of the trial court, the Supreme Court said:

"We see no need to decide upon this record whether the Quincy Trust Company was a creditor at the time when the present petition was filed. Even if it was not, no error is shown in the decree for removal. The denial of the motion to strike out the appearance of the Quincy Trust Company was of no practical consequence.

Ordinarily courts properly remain inactive unless and until judicial action is required by some party in accordance with recognized practice. But courts have a wide inherent power to do justice and to adopt procedure to that end. * * * Where a court has once taken jurisdiction and has become responsible to the public for the exercise of its judicial power so as to do justice, it is sometimes the right and even the duty of the court to act in some particular *sua sponte*. * * *

Especially appropriate for the exercise of judicial power *sua sponte* is a case in which an appointee of the court to a position of trust is found to be unworthy or unsuitable. A simple illustration will suffice to show the necessity of that power. Suppose a Probate Court should learn that an administrator has embezzled money and has become thoroughly untrustworthy. The persons entitled as distributees, let us suppose, are residents of a distant country, are without experience in affairs, and have no counsel or representative here. In such case it would be a reproach to the law if the Probate Court were compelled to remain inactive until some interested person should appear and file a petition for removal.

The question whether the Quincy Trust Company had a private right to appear and petition becomes imma-

terial in view of the result to which we have come as to the legality of the decree of removal.''[5]

Likewise, under our conclusion that the administratrix was properly removed, the question of whether A. V. Adams had a right to appear and petition becomes immaterial.

Affirmed.

[5] The Court also, in this Opinion, gave an interesting discussion on the word "unsuitable", as follows: "The statutory word 'unsuitable' gives wide discretion to a probate judge. Past maladministration of a comparable trust, bad character, misconduct, neglect of duty, or physical or mental incapacity, warrants a finding that an executor or administrator is unsuitable. Such a finding may also be based upon the existence of an interest in conflict with his duty, or a mental attitude toward his duty or toward some person interested in the estate that creates reasonable doubt whether the executor or administrator will act honorably, intelligently, efficiently, promptly, fairly, and dispassionately in his trust. It may also be based upon any other ground for believing that his continuance in office will be likely to render the execution of the will or the administration of the estate difficult, inefficient or unduly protracted. Actual dereliction in duty need not be shown."