Carra TAYLOR *v.* James Eugene WOODS, et al.

CA 07-203 282 S.W.3d 285

Court of Appeals of Arkansas
Opinion delivered April 9, 2008

[Rehearing denied August 20, 2008.]

*Rieves, Rubens & Mayton,* by: *Kent J. Rubens*; and *Lax, Vaughan, Fortson, McKenzie & Rowe, P.A.* by: *Grant E. Fortson,* for appellant.

*Hamilton & Colbert, LLP,* by: *Donis B. Hamilton,* for appellee James E. Woods.

*Wright, Lindsey & Jennings LLP,* by: *Edwin L. Lowther* and *Mark N. Ohrenberger,* for appellee Edward P. Connell, Sr.

*Cahoon & Smith,* by: *David W. Cahoon,* for appellees Gail Taylor Woods, John Michael Beck Taylor, Christine Owen, Charlotte Dodd, Deborah Eubanks, Wesley Taylor and Beck Taylor.

ROBERT J. GLADWIN, Judge. Lowell W. Taylor, Jr. (Decedent), died testate on August 8, 2003. Appellant Carra Taylor, the decedent's widow, appeals from the circuit court's decision refusing to remove appellee James Woods as one of the three co-executors of the estate; from the court's award of a fee to Woods for his services as co-executor; from the court's allowance of a claim against the estate by another co-executor, appellee Edward Connell, for $10,000 for legal services he performed for the decedent over a twenty-plus-year period; and from the circuit court's decision not to award her attorney's fees against Connell on claims where she prevailed. Woods appeals from the award to Taylor of attorney's fees against him personally. Connell appeals from the circuit court's partial summary judgment on the issue of the construction of the decedent's will in the manner advocated by Taylor and from the award of attorney's fees against him personally. Gail Taylor Woods, John Michael Beck Taylor, Christine Owen, Charlotte Dodd, Deborah Eubanks, Wesley Taylor, and Beck Taylor (collectively, the "older children" or the "natural children") are the decedent's children or grandchildren from a prior marriage.[1] They appeal from the circuit court's construction of the will. We affirm the circuit court in all respects.

---

[1] Gail Taylor Woods is the spouse of co-executor James Woods. Deborah Eubanks, Wesley Taylor, and Beck Taylor are the children of the decedent's fourth child, Lowell W. Taylor, III. Charlotte Dodd is the mother of Deborah, Wesley, and Beck.

## I. Factual background

The decedent died in August 2003. At the time of his death, the decedent left a will dated May 26, 1994, and a first codicil dated August 5, 2002.[2] Article I of the will, as modified by the first codicil, bequeathed to Taylor all of the decedent's personal and household effects and the decedent's interest in three Florida condominiums and a residence in Memphis, Tennessee.[3]

Article II of the will created a marital-deduction trust for Taylor for life, with the remainder to Taylor's children that the decedent adopted.[4] The trust was to consist of 50% of the decedent's

> adjusted gross estate as finally determined for federal estate tax purposes, less (meaning subtract) the aggregate amount of marital deductions, if any, allowed for interests in property passing or which have passed to Carra Lewis Taylor otherwise than by the terms of this Article and Article I of my Will. I hereby define my "adjusted gross estate" as my gross estate as finally determined for federal estate tax purposes, less the aggregate amount of deductions allowed by [the Internal Revenue Code].

Woods and Connell were to serve as trustees for the trust.

Article III of the will creates four residuary trusts for the older children. Woods and Connell were also the trustees for each of the trusts.

Article VI of the will waived the filing of inventories and accountings by the executors. It also instructed the executors to attempt to minimize the estate tax payable by the decedent's estate.

The decedent's will was admitted to probate by order entered on August 21, 2003. A dispute arose over the proper construction of the will. On July 27, 2005, Taylor filed a petition

---

[2] There was a second codicil, dated March 26, 2003, that added Daniel Monteverde as the third co-executor with all of the powers of the original co-executors.

[3] One of the condominiums was titled solely in the decedent's name. Taylor held a 54% interest in the second condominium. The third condominium was jointly held.

[4] The adopted children are Mary Henrietta Taylor Watt, Lewis Frederick Taylor, Cynthia Elaine Taylor Monteverde, and Christopher Albert Taylor. These parties are collectively referred to as the "adopted children." Cynthia Monteverde is the spouse of co-executor Daniel Monteverde.

seeking construction of the will, the filing of an inventory and accounting, the removal of Woods and Connell as co-executors, and the disgorgement of fees by Connell. She asserted that she was entitled to the items in Article I of the will in addition to the 50% share bequeathed in trust in Article II and that Connell, the draftsman of the will, and Woods asserted that the proper inter-pretation was that the 50% share in Article II included the property described in Article I. Taylor also asserted that Woods and Connell interpreted the will for the benefit of the natural children, filed incorrect estate tax returns, failed to answer Taylor's questions concerning the administration of the estate, and failed to file inventories or accountings as required.

As to the count seeking disgorgement of fees, the petition alleged that Connell submitted a claim against the estate for $59,445, based on an alleged agreement that Connell would render legal services to the decedent from 1981 until the end of the decedent's life without sending statements for those services and that the claim was paid without court approval, despite the fact that Connell, one of the co-executors, had an inherent conflict of interest and no documentation to support the alleged agreement. The petition also alleged that Connell had been paid $40,000 as an executor's fee, Woods had been paid $5000, and Monteverde paid $10,000, and that the three claimed in the federal estate tax return that they were entitled to $146,000 for serving as the co-executors.

Finally, as to the removal of the co-executors, the petition alleged, in addition to the allegations already set forth, that they engaged in self-dealing, had conflicts of interest, failed to distribute assets from the estate, and breached their fiduciary duties. The petition also alleged that Woods was acting as real-estate agent for the estate and stood to profit from transactions to sell two parcels of real property in which the estate has an interest without notice to the beneficiaries of the estate. It further alleged that Woods substantially undervalued the properties for purposes of the federal estate tax purposes when compared to the real-estate contracts on those properties.

Woods and Monteverde filed a joint response to Taylor's petition in which they alleged that she lacked standing to raise issues regarding Articles II or III of the will. In their brief in support of the motion to dismiss, they asserted that only the trustees could bring such claims. They also denied the material allegations of the petition and stated that the order appointing them as co-executors excused them from making any inventories

or accountings. Connell's separate response also raised the issue of standing and denied the material allegations.

The older children filed their own petition seeking construction of the will as suggested by Woods and Connell. They also objected to that portion of Taylor's petition seeking the disgorgement of fees and the removal of the co-executors in that they averred that Taylor was kept fully informed as to the filing of the estate tax return and the valuation of the property.

On March 30, 2006, Taylor filed a motion for partial summary judgment as to the construction and interpretation of the will. Attached to the motion was an opinion letter from Robert Naylor, a CPA, opining that Taylor's interpretation was correct because the bequest to the trust was not reduced by property passing under Articles I or II and that the Florida condominiums and the Tennessee residence all passed under Article I of the will. The older children filed a countermotion for partial summary judgment as to the construction of the will. In his response to Taylor's motion, Connell adopted by reference the older children's motion for partial summary judgment as to the construction of the will.

By order entered on July 26, 2006, the circuit court granted Taylor's motion for partial summary judgment and denied the older children's motion. The court found that, pursuant to Article II, Taylor was entitled to 50% of the decedent's adjusted-gross estate without any reduction for the items passing under Article I.

At trial, much of the testimony focused on the valuation of real property in which the decedent held an interest. There was also testimony concerning the disagreements among the executors and the two sets of children as to the proper construction of the will.

## II. The circuit court's ruling

The circuit court ruled from the bench and began by noting that the will's appointment of the three co-executors was a conflict waiting to happen because of the relationships of the persons appointed and the way the will based the bequests to Taylor on the size of the adjusted-gross estate. The court also noted that there may have been a misunderstanding by some as to the proper role of an executor, which is to carry out the decedent's wishes as expressed in the will and not to represent any heir or group of heirs.

The court first ordered the executors to file an amended estate tax return to conform to the court's interpretation of the will and that Woods and Connell pay Taylor her attorney's fees incurred in obtaining a construction of the will. The court then turned to the related issue of whether the estate tax return should be further amended to correct the undervaluation of assets, concluding that such an amended return should be filed. The court noted that there were discrepancies totaling almost $1.5 million in how some property was appraised for estate tax purposes when compared to other purposes, as well as the fact that a commercial property generating rent of $90,000 per year was valued at $59,000. The executors were ordered to retain new appraisers and seek court approval of those appraisers. The court also ordered the executors to file verified inventories and accountings but declined to award Taylor her fees on this issue, finding that the executors were entitled to rely on the earlier court order that admitted the will to probate and waived the filing of inventories and accountings.

The court found that Connell's claim required court approval and, because there was no such approval, the claim was improperly paid. In considering whether Connell was entitled to any amount on his claim, the court noted that it was undisputed that Connell had performed legal services for the decedent for many years and that he was not paid for those services but that there was no proof as to how Connell arrived at the amount of his claim. The court found that, although Connell testified that he had an agreement that he would keep a continuing bill that would not be paid until the decedent's death, Connell did not keep a continuing bill, instead creating the bill after the decedent's death from a review of the files. The court concluded that $10,000 was a reasonable fee under the circumstances. Connell was ordered to repay the estate $49,445 plus interest at 6%. The interest was awarded because of the court's conclusion that the claim should never have been paid without a hearing. Taylor was awarded her attorney's fees on this issue, to be paid out of the recovery from Connell. The amount of the fee was not specified.

The court found that the $40,000 executor's fee paid to Connell was not proper; that Connell was not entitled to any fee because he did not perform any substantial services for the estate; and that he caused many of the problems by not seeking the court's construction of the will when a dispute arose, by preparing an order waiving the inventory and accounting, and by paying his

claim against the estate without a hearing and court approval. Connell was ordered to personally pay Taylor's fees on this issue.

The court found that Woods had provided services to the estate by harvesting crops and managing the real estate and that his executor's fee of $5000 was not reasonable and that Woods deserved more. The court declined to have Woods pay Taylor's legal fees.

Whether the executor's fee paid to Monteverde and whether he should be removed as co-executor were the next issues addressed by the circuit court, who concluded that there was no basis for removing Monteverde and that, although Monteverde believed that he did not deserve his fee, such fee was reasonable. The court found that Monteverde was the one co-executor who most closely fulfilled the role of an executor because he questioned the interpretation of the will, the payment of commissions to Woods, and the payment of Connell's claim.

The court then turned to the issue of whether Connell should be removed as co-executor because he was "unsuitable." The court found that Connell was unsuitable by acting in his own self-interest in accepting a $40,000 executor's fee for little work and by making a claim against the estate without seeking court approval. The court noted that Connell was not a novice, having focused his practice on wills and estates since 1961 and having taught the law on those very subjects. The court declined to award Taylor an attorney's fee on this claim, concluding that Connell had "paid enough."

Finally, the circuit court began its discussion of the issue of whether Woods should be removed as co-executor by noting that Woods had a great deal of feelings for the decedent and that he had divided loyalties. The court found that Woods acted properly in some respects by marshaling the assets of the estate, managing the estate property, and by not unnecessarily incurring expenses chargeable to the estate. The court also found that Woods failed to seek a construction of the will despite a clear dispute, paid Connell's claim without court approval, paid real-estate commissions to his firm without a claim being filed or court approval, and failed to question the appraisals that undervalued some of the property of the estate. The court found that it was not a *per se* conflict for Woods to have acted as both executor and real-estate agent for the estate or in receiving commissions on the sale of real estate. The court also found that, although Woods did not inten-

tionally misinterpret the will or undervalue the assets for purposes of causing harm to Taylor, he and Connell focused almost exclusively on reducing estate taxes. On balance, the court concluded that Woods should not be removed as executor but added the caveat that, should it be necessary to remove Woods in the future, he will be ordered to pay attorney's fees, both for that future case, as well as the present case.

Judgment was entered in accordance with the court's findings on July 31, 2006. On August 14, 2006, Taylor filed a motion for new trial, asserting the same issues that she raises in this appeal. Taylor filed her notice of appeal on August 30, 2006. By order entered on September 11, 2006, the circuit court denied Taylor's motion for new trial, the motion by Woods and Monteverde seeking reconsideration, and Connell's motion for new trial on the issue of attorney's fees. Taylor amended her notice of appeal to include the denial of her motion for new trial. Woods filed his notice of cross-appeal on September 14, 2006, from the judgment requiring him to personally pay Taylor's attorney's fees and the denial of his motion for reconsideration. Connell also filed his notice of cross-appeal on September 14, 2006, from the partial summary judgment construing the will, from that part of the judgment requiring him to personally pay Taylor's attorney's fees, and from the denial of his motion for new trial. The older children filed their notice of cross-appeal from the circuit court's order on partial summary judgment, both the grant of Taylor's motion and the denial of their cross-motion.

### III. Standard of review

We review probate cases de novo and affirm the circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Conner v. Donahoo*, 85 Ark. App. 43, 145 S.W.3d 395 (2004). A finding of fact is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Id.* In reviewing the circuit court's findings, we give due deference to the circuit judge's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.*

### IV. Removal of co-executor and disgorgement of executor's fees

Taylor first argues that the circuit court erred in failing to remove James Woods as one of the co-executors of the decedent's estate. She also argues that the circuit court erred in failing to

require Woods to disgorge his $5000 executor's fee after the court found that Woods had conflicts of interest and had neglected his duties. Taylor testified that she had lost trust in Woods after February 2005 and that she was not comfortable with any of the older children serving as executor. Woods testified that he wanted to remain as executor because that was the decedent's wish.

Arkansas Code Annotated section 28-48-105 (Repl. 2004) allows a court to remove a personal representative of an estate if that person "becomes mentally incompetent, disqualified, unsuitable, or incapable of discharging his or her trust, has mismanaged the estate, has failed to perform any duty imposed by law or by any lawful order of the court." The statute makes removal discretionary with the circuit court by use of the term "may." *See Jones v. Balentine*, 44 Ark. App. 62, 866 S.W.2d 829 (1993).

In *Davis v. Adams*, 231 Ark. 197, 328 S.W.2d 851 (1959), the Arkansas Supreme Court affirmed the probate court's order removing the appellant as administratrix of her deceased husband's estate. In doing so the supreme court cited a Massachusetts case, *Quincy Trust Co. v. Taylor*, 57 N.E.2d 573 (Mass. 1944), and noted that the *Quincy* court gave an interesting discussion on the word "unsuitable," which is one of the bases provided in section 28-48-105 for removing a personal representative. The court in *Quincy* stated:

> The statutory word "unsuitable" gives wide discretion to a probate judge. Past maladministration of a comparable trust, bad character, misconduct, neglect of duty, or physical or mental incapacity, warrants a finding that an executor or administrator is unsuitable. Such a finding may also be based upon the existence of an interest in conflict with his duty, or a mental attitude toward his duty or toward some person interested in the estate that creates reasonable doubt whether the executor or administrator will act honorably, intelligently, efficiently, promptly, fairly and dispassionately in his trust. It may also be based upon any other ground for believing that his continuance in office will be likely to render the execution of the will or the administration of the estate difficult, inefficient or unduly protracted. Actual dereliction in duty need not be shown.

*Quincy*, 57 N.E.2d at 574, footnoted in *Davis*, 231 Ark. at 205 n.5, 328 S.W.2d at 856 n.5.

Taylor relies on *Guess v. Going*, 62 Ark. App. 19, 966 S.W.2d 930 (1998), where this court ordered the probate court to remove

an executrix on the ground of unsuitability because of an existing conflict of interest. Before her death, Anna Guess granted Alice Going a durable power of attorney. Prior to Anna's death, Going entered into an extremely favorable land-sale contract with her daughter and son-in-law. Upon Anna's death, the court appointed Going as executrix, over the opposition of the other heirs. As executrix, Going refused to challenge the land-sale agreement and testified that a "mother's love" prevented her from doing so. This court found that this attitude created a conflict of interest that would prevent Going from performing her fiduciary duties, noting that the other heirs would not properly benefit from the agreement. The *Guess* court relied on *Price v. Price*, 258 Ark. 363, 527 S.W.2d 322 (1975), where the supreme court required the probate court to remove an administratrix who persistently acted in her own interests in order to deprive her stepchildren of their entitlements. The administratrix had failed to follow specific orders of the court.

Although the circuit court found that Woods had made some errors as one of the co-executors, it also found that Woods was not intentionally attempting to harm Taylor. The court did not find that any of Woods's actions endangered the estate property or that they were intended to harm any party. Rather, the court noted that many of the problems stemmed from a misunderstanding of the proper role of an executor and that Woods should have a better understanding of his role. Also, the fact that the property was undervalued had more to do with Woods and Connell wanting to reduce the estate's tax liability rather than any self-dealing or attempt to benefit themselves.

The circuit court weighed Woods's actions, both positive and negative, and found that, on balance, the positive benefits to the estate outweighed the negative. Although Taylor conceded the discretion of the circuit court, her argument that Woods should nevertheless be removed because of the court's finding of conflicts of interest would effectively amend the statute to remove the court's discretion in such matters. We cannot say that the circuit court abused its discretion in not removing Woods as one of the co-executors.

Taylor also challenges the circuit court's allowance of a $5000 executor's fee to Woods. She argues that Woods is not entitled to a fee because of the conflicts of interest. Arkansas Code Annotated section 28-48-108(c) provides, in pertinent part, that "the court, in the exercise of its discretion, may decline to allow

any compensation to or on behalf of a personal representative who has failed . . . . to perform any other substantial duty pertaining to his or her office, and, for the same reason, the court may reduce the compensation which would otherwise be allowed to or on behalf of such a personal representative." Taylor relies upon *Estate of Torian v. Smith*, 263 Ark. 304, 564 S.W.2d 521 (1978), in which a reduction of the executor's fees was upheld where the executor ignored counsel's advice to probate the will first in Arkansas, instead of Mississippi, and that action was found to have dangerously depleted the interests of the Arkansas estate. However, *Estate of Torian* does not help Taylor because, in that case, the executor's actions seriously depleted the Arkansas assets of the estate and yet the executor was still allowed a fee, albeit reduced.

■ The Restatement (Second) of Trusts § 243 (1957) provides that a court has the discretion to allow the executor a fee, even in situations where the executor was found to have breached his fiduciary duties in some manner. Here, the circuit court weighed the factors that the Restatement suggests should be considered, such as (1) whether the fiduciary was acting in good faith; (2) whether the breach was intentional or negligent or without fault; (3) whether the breach related to all or only part of the property; (4) whether the breach occasioned any loss and, if so, whether the loss has been made good by the fiduciary; and (5) whether the fiduciary's services were of value to the estate. *See id.* cmt. c. Woods was found not to have acted so as to intentionally harm Taylor and to have provided valuable services to the estate. The court also found that the undervaluation of the estate property could harm the heirs in terms of estate taxes and that his actions (such as the construction of the will) benefited some of the heirs to the detriment of other heirs. The court also noted that a higher fee was warranted. Because the circuit court considered the proper factors, we cannot say that it abused its discretion in allowing Woods an executor's fee.

### V. *Allowance of Connell's claim*

For her next point, Taylor argues that the circuit court erred in allowing Connell any fee on his claim against the estate for legal services he provided from 1981 until the decedent's death. She bases her argument, in part, on the fact that the claim was paid without prior court approval. She also argues that the payment of the claim violated Ark. Code Ann. §§ 28-50-105 and 28-50-107.

Those sections generally require that a personal representative establish his own claim against the estate and obtain court approval.

Taylor does not contest the fact that Connell provided the services reflected in his statement. Instead, she argues that the circuit court found Connell's claim to be excessive and that this justifies the denial of the claim for fees. However, the record does not support her argument. The circuit court started with the premise that Connell was to repay the entire amount of his claim, with interest, because the claim was originally paid without court approval. The court then proceeded to consider the claim anew and determined that $10,000 was a reasonable fee for Connell's services to the decedent. This was made clear during the hearing on the motions for new trial on this issue when the court said that it

> did not necessarily make a finding of an unreasonable or excessive fee, except to the extent that the Court did not find that the application was supported by any proof beyond the $10,000 fee. And, I felt like that the, that what was indicated on the claim did justify a fee of $10,000. It could have been more, but it wasn't justified in my mind for any more than that.

█ In support of her argument, Taylor relies on *White v. McBride*, 937 S.W.2d 796 (Tenn. 1996). However, such reliance is misplaced because *McBride* did not involve a claim against a decedent's estate for services performed for the decedent but rather a contingency contract with the surviving spouse based on a percentage of the amount of the estate awarded to that spouse by operation of law. *Crawford & Lewis v. Boatmen's Trust Co.*, 338 Ark. 679, 1 S.W.3d 417 (1999), another case relied on by Taylor, also did not involve a claim against the estate for services rendered to the decedent and is likewise distinguishable from the present case.

### VI. *Attorney's fees*

Under this heading we will consider points advanced by Taylor, Woods, and Connell. Taylor argues that the circuit court erred in not awarding her attorney's fees from Connell on claims where she prevailed, such as the removal of Connell as co-executor and the requirement that accountings and inventories be filed. Connell and Woods each appeal from the award to Taylor of

attorney's fees against each of them, personally, for construction of the will.[5] They argue that there is no authority for an award of fees against them personally.

### A. Authority for fee award

We first address the arguments by Connell and Woods that there is no authority for the circuit court's award of fees to Taylor against them personally. The law in Arkansas has long recognized that probate courts do not have authority to award attorney's fees for services rendered to individual beneficiaries. *Swaffar v. Swaffar*, 327 Ark. 235, 938 S.W.2d 552 (1997); *Paget v. Brogan*, 67 Ark. 522, 55 S.W. 938 (1900). Taylor cites *Alexander v. First National Bank*, 278 Ark. 406, 646 S.W.2d 684 (1983), where the supreme court held that attorney's fees could properly be awarded against a former personal representative who breached her duty to the estate. The *Alexander* court construed what is now Ark. Code Ann. § 28-52-101(c), which provides that a personal representative shall be chargeable in his accounts for loss resulting from neglect, embezzlement, or self-dealing, among other things. However, the "in his accounts" language indicates that the personal representative is liable to the estate, not to an individual beneficiary. *Alexander* also did not address the issue of the court's authority for an award of fees. Therefore, *Alexander* is not authority for an award of fees to Taylor.

▮ Nonetheless, under the circumstance of this case, Ark. Code Ann. § 28-73-1004 (Supp. 2007), gives the circuit court the discretion to award Taylor her attorney's fees to be paid by Woods and Connell.[6] A trustee is entitled to seek instructions whenever he has reasonable doubt regarding any matter relating to administration of the trust. *See Arkansas Baptist State Convention v. Board of Trustees*, 209 Ark. 236, 189 S.W.2d 913 (1945). These matters can include the construction of the trust instrument, the extent of the trustee's duties or powers, the identity and interests of the beneficiaries, or the resolution of a dispute among beneficiaries. *See*

---

[5] Connell also challenges the award of fees against him on the claim that he should disgorge his executor's fee.

[6] Section 28-73-1004 provides that "[i]n a judicial proceeding involving the administration of a trust, a court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy."

*Patterson v. Polk*, 229 Ark. 272, 317 S.W.2d 286 (1958); Restatement (Third) of Trusts § 71 (Tentative Draft No. 4 2005). Taylor's petition seeking a construction of the will necessarily involved a construction of a trust instrument as well because the will devised to Woods and Connell, as trustees, all of the decedent's property not otherwise disposed of in the trusts created for the benefit of Taylor and the older children. This court has held that an action to determine whether certain property is an asset of a trust is an action "involving the administration of a trust" within the meaning of section 28-73-1004. *Calvert v. Estate of Calvert*, 99 Ark. App. 286, 259 S.W.3d 456 (2007). Therefore, the circuit court had authority to award Taylor attorney's fees to be paid by Woods and Connell personally.

### B. *Taylor's claim for additional fees*

The decision to award attorney's fees and the amount to award are discretionary determinations that will be reversed only if the appellant can demonstrate that the circuit court abused its discretion. *Perry v. Baptist Health*, 368 Ark. 114, 243 S.W.3d 310 (2006). Prior to awarding attorney's fees, the circuit court is required to make a determination of which party, if any, prevailed on the merits of the case as a whole, and need not make such a determination for particular issues within the case. *Id.* Here, the circuit court awarded Taylor fees on certain issues and specified how the fees were to be paid, *i.e.*, by Woods and Connell personally or from the recovery against Connell. The court was not required to grant Taylor her fees on each particular issue. Therefore, we cannot say that the court abused its discretion in not awarding Taylor fees on every issue involved in the litigation.

### VII. *Construction of the will*

The older children and Connell appeal from the circuit court's order construing the will in Taylor's favor. They argue that the circuit court erred in granting Taylor's motion for partial summary judgment while denying their own cross-motions because the will unambiguously directs that the value of the property passing to Taylor under Article I of the will be subtracted from the portion of the decedent's adjusted gross estate bequeathed in trust for Taylor's benefit in Article II.

We begin with Taylor's challenge of the appeal as being untimely because the older children and Connell did not file their

notices of appeal within thirty days of the entry of the order of partial summary judgment on July 26, 2006. Although Ark. Code Ann. § 28-1-116(a) allows an appeal from almost any probate order, it does not *require* that a notice of appeal be filed immediately instead of when the court issues a final order. Section 28-1-116(g)(1) provides that, except as otherwise provided in the probate code, appeals in probate cases shall be taken according to the procedures for appeals in equity cases. *See In re Guardianship of Vesa*, 319 Ark. 574, 892 S.W.2d 491 (1995); *Snowden v. Riggins*, 70 Ark. App. 1, 13 S.W.3d 598 (2000).

Here, the partial summary judgment lacked finality because it was obviously partial and other issues remained. In *Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 360 Ark. 521, 202 S.W.3d 525 (2005) (per curiam), the supreme court held that a notice of appeal filed from an order that lacked finality was a nullity and that any appeal brought from a non-final order is subject to dismissal. Therefore, any attempt to appeal from the partial summary judgment in the present case would have been a nullity. The partial summary judgment also did not contain an Ark. R. Civ. P. 54(b) certification allowing for an immediate appeal.

The partial summary judgment became final on July 31, 2006, when judgment was entered disposing of the remaining claims. Motions for new trial were filed and, under Ark. R. App. P.–Civil 4(b), such motions extended the time for all parties to file their notice of appeal. The older children filed their notice of appeal on September 18, 2006. When sections 28-1-116(a) and (g) are read together, the appeals by Connell and the older children are timely. *See Ford v. Ford*, 347 Ark. 485, 65 S.W.3d 432 (2002), where the court held that, in a divorce case, a spouse was not required to immediately appeal the trial court's final decision on custody, even though Ark. R. App. P.–Civil 2(d) permitted an immediate appeal, where there were other issues remaining. Therefore, we proceed to the merits of the point.

In the interpretation of wills, the paramount principle is that the intent of the testator governs. *Carpenter v. Miller*, 71 Ark. App. 5, 26 S.W.3d 135 (2000). The testator's intent is to be gathered from the four corners of the instrument itself. *Id.* However, extrinsic evidence may be received on the issue of the testator's intent if the terms of the will are ambiguous. *Harrison v. Harrison*, 82 Ark. App. 521, 120 S.W.3d 144 (2003). Here, all parties agree that the will is unambiguous.

 The circuit court correctly interpreted the will. The marital trust established for Taylor's benefit was to include 50% of the decedent's adjusted gross estate "less (meaning *subtract*) the aggregate amount of marital deductions, if any, allowed for interests in property passing or which have passed to [Taylor] otherwise than by the terms of this Article and Article I of my Will." The "otherwise than by" language describes the class of property interests passing to Taylor that reduces the amount of the bequest to the trust, *i.e.*, those property interests passing or which have passed *otherwise than by* Article I and Article II of the will. Because the condominiums and the Tennessee residence pass to Taylor by the terms of Article I, they are excluded from the class of property to be subtracted from the bequest made in Article II. If the decedent had wanted the property passing under Article I to be subtracted from the bequest in Article II, there needed to be some punctuation or other language used to indicate that Article I was not part of the language controlled by the "otherwise than by" language.

As the circuit court noted, the argument that the decedent wanted his estate to be equally divided between the older children and Taylor and her children is contradicted by Article IX of the will. That section provides that, if Taylor survived the decedent, all estate and inheritance taxes were to be payable solely out of the residuary estate passing under Article III of the will. If the estate and inheritance taxes were to be paid solely out of the residuary estate, the older children would not be getting half of the estate.

Affirmed.

BIRD and VAUGHT, JJ., agree.