2012 Ark. App. 236

**Charolette ASHLEY, Appellant**

v.

**Richard H. ASHLEY and J.D. Ashley, Jr., in their Capacity as Personal Representatives for the Estate of J.D. Ashley, Sr., Deceased, Appellees.**

No. CA 11–741.

Court of Appeals of Arkansas.

April 4, 2012.

Rehearing Denied May 16, 2012.

Philip K. Lyon, Bruce H. Phillips; Lyon & Phillips, PLLC, Nashville, TN and F. Keith Adkinson, Hartsville, TN, for appellant.

Jim L. Julian, Heather G. Moody, Jason W. Earley, Chisenhall, Nestrud & Julian PA, Little Rock, for appellees.

DAVID M. GLOVER, Judge.

This is a companion case to *Ashley v. Ashley*, 2012 Ark. App. 230, 2012 WL 1111381, also handed down today. These two appeals involve the estate of J.D. Ashley, Sr., deceased. Charolette Ashley, the decedent's widow, is the appellant in both cases. Appellees Richard Ashley and J.D.

Ashley, Jr., two of the decedent's children from a prior marriage, are the personal representatives of the decedent's estate.[1] Appellant argues that the circuit court erred in finding that the decedent had transferred his interest in a family limited partnership to a revocable trust. We affirm.

### Background & Procedural History

Prior to the decedent's death, his attorney, William Haught, prepared several estate-planning[2] documents for the decedent, including a will, a family limited-partnership agreement, and a revocable trust, all of which were executed on April 4, 1997. The will was a pour-over will that conveyed the remainder and residue of the decedent's estate in trust to the trustees of the "J.D. Ashley, Sr., Revocable Trust Declaration." The will also included a "no-contest" clause.

The family limited partnership was created for the ownership, management, and development of real estate. The general partners were the decedent, Richard Ashley, and J.D. Ashley, Jr., and each held a 1% interest as general partners. The initial limited partners were the decedent and his four children. The decedent held an 89% interest as a limited partner and the remaining limited partners each held a 2% interest. The dispositive provision of the partnership agreement provided that should appellant survive the decedent and if decedent had transferred his partnership interest to a trust, she would be entitled to receive $8,000 per month in spendable funds to be paid by the partnership to the trust. This provision would be void should appellant elect to take against the will or otherwise challenge or contest the provisions of the decedent's will.

By amendment to the partnership agreement, effective January 1, 1998, the interest of each of the three general partners was reduced to .5% each; the decedent's interest as a limited partner was increased to 96.3188%; Richard Ashley and J.D. Ashley, Jr., each held a .2953% interest as a limited partner; and Todd Ashley and Melody Ashley each held a .7953% interest as limited partners.

A second amendment to the partnership agreement, executed in September 2004, [3]provided that appellant would receive the decedent's interest in the limited partnership upon his death and that the partnership would purchase that interest from appellant for $5 million. There would be no obligation to purchase the decedent's interest if either appellant or the partnership did not believe that the interest was worth $5 million.

The revocable trust was established by the decedent as settlor and first trustee. The decedent, as settlor, retained the power to add or withdraw any property from the trust, to amend the trust declaration in any respect, and to revoke the trust. Upon the death of the settlor, the trust estate was to be divided into five equal shares, one for appellant and each of the decedent's children. Appellant's share was to be held as a marital-deduction trust. Following the acknowledgment of the settlor's signature, a schedule of trust assets was attached and left blank.

The first amendment to the trust, executed in November 2003, provided that one-half of the trust estate would be distributed to appellant and the remaining portion distributed in equal shares to the settlor's four children and Candace Baughman, appellant's daughter by her first marriage and the decedent's stepdaughter. Baughman was also to receive the remain-

---

1. The decedent's other two children are Todd      Ashley and Melody Ashley.

ing interest of the marital trust upon appellant's death.

In September 2004, the trust declaration was amended to provide appellant with $5 million of the settlor's interest in the limited partnership. The amendment also eliminated the marital-deduction trust for appellant. Baughman was made a beneficiary of the trust.

The decedent died on March 3, 2010, and his coexecutors petitioned for probate of his will. The will was admitted to probate by order entered on March 19, 2010. On April 2, 2010, appellant elected to take against the will. She also petitioned to remove the personal representatives because of hostility between herself and the personal representatives based, in part, on a lawsuit appellant filed seeking an accounting of the decedent's ownership interest in the family limited partnership.

The personal representatives filed an inventory of the decedent's assets on August 19, 2010. The inventory listed no real-estate holdings nor the decedent's interest in the family limited partnership. It did list certain intangible personal property such as bank accounts, stocks, insurance proceeds, and a note from Todd Ashley. The total value of the intangible personal property was approximately $251,000, although the value of the note and some of the stock had not been determined.

Appellant objected to the inventory, asserting that the inventory failed to list real property owned by the decedent and having an assessed valuation in excess of $1 million. She also objected to the failure to list the decedent's interest in the family limited partnership, which she claimed had a value in excess of $15 million. She denied that the decedent had transferred his interest in the family limited partnership to the revocable trust prior to his death.[2]

On October 18, 2010, appellant filed a motion in limine, seeking to exclude parol evidence and hearsay concerning the transfer of assets to the trust, and asserting that the court's finding in the accounting case precluded relitigation of the issue of the decedent's ownership in the limited partnership. Hearings were held in the case on October 18, 25, 27, and November 5, 2010.

### The Circuit Court's Rulings

On December 29, 2010, the circuit court entered its order. The court found appellees were suitable to continue as personal representatives for the estate and denied appellant's petition to remove them. The court also found that there was clear and convincing evidence that the decedent's interest in the family limited partnership had been transferred to the trust prior to his death and was properly omitted from the inventory filed by the estate. The court denied appellant's petition for payment of income for the same reason. The court also denied appellant's motion in limine. Appellant timely filed her notice of appeal.

### Arguments on Appeal

For reversal, appellant argues that the circuit court erred in denying (1) her motion in limine concerning the decedent's interest in the family limited partnership; (2) her objections to the inventory as to the decedent's interest in the family limited partnership; (3) her petition for payment of income; and (4) her petition to remove the personal representatives because of an adversarial relationship.

---

**2.** Candace Baughman also filed an objection to the inventory, largely making the same arguments appellant made in her objections. She also included real-estate holdings not listed in appellant's objections.

## Standard of Review

■ This court reviews probate matters de novo but will not reverse findings of fact unless they are clearly erroneous. *McAdams v. McAdams,* 353 Ark. 494, 109 S.W.3d 649 (2003); *Morton v. Patterson,* 75 Ark.App. 62, 54 S.W.3d 137 (2001). A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left on the entire evidence with the firm conviction that a mistake has been committed. *Morton, supra.* This court must also defer to the superior position of the lower court sitting in a probate matter to weigh the credibility of the witnesses. *McAdams, supra.*

## Decedent's Interest in the Family Limited Partnership

Under this heading, we discuss appellant's arguments that the circuit court erred in denying her motion in limine, her petition for payment of income and allowances, and her objections to the inventory of the decedent's assets. All three arguments address the issue of whether the decedent's interest in the partnership was properly determined to be held by the revocable trust.

In her argument under these points, appellant contends that there was no clear and convincing evidence to establish that the decedent transferred his interest in the family limited partnership to the revocable trust prior to his death because the schedule of assets to be transferred to the trust was left blank, and the trust was a complete expression of the decedent's intention, rendering parol evidence inadmissible to vary the terms of the trust instruments. Appellant also argues that the circuit court erred in admitting hearsay evidence to establish that decedent had conveyed his interest in the partnership to the trust. Appellant further argues that the personal representatives should be barred by res judicata and collateral estoppel from claiming that the decedent's interest in the family limited partnership was held in the trust.

## A. Res Judicata or Collateral Estoppel

■ Some background is necessary for a full understanding of appellant's argument. In December 2008, appellant, using a health-care power of attorney from the decedent, filed a complaint against Richard and J.D., Jr., and the partnership, seeking an accounting, declaratory and injunctive relief, and compensatory and punitive damages. The defendants moved for summary judgment, claiming that appellant lacked standing because the decedent had executed only a power of attorney to appellant for health care and personal matters, while he had executed another power of attorney to allow Richard and J.D., Jr., to handle his business affairs.

In her order granting the motion for summary judgment in the accounting case, Judge Mary McGowan stated that the decedent, who was alive at that time, owned "at least 95% of the Partnership." Appellant relies on this statement in Judge McGowan's order to argue that the personal representatives in the present case are bound by that determination. Judge McGowan concluded, however, that appellant lacked standing to bring the suit and dismissed the suit on that basis.[3] The circuit court in the present case found that the only issue Judge McGowan determined was that appellant lacked standing.

---

**3.** We dismissed appellant's appeal of Judge McGowan's order without reaching the merits because the decedent's death prior to the submission of the appeal terminated appellant's authority to act under the power of attorney. *Ashley ex rel. Ashley v. J.D. Ashley, Sr. Family Ltd. P'ship,* 2010 Ark. App. 473, 2010 WL 2195785.

■ We hold that collateral estoppel has no application in this case because the issue of the ownership of the decedent's interest in the family partnership was never litigated before Judge McGowan. *See Beaver v. John Q. Hammons Hotels, L.P.,* 355 Ark. 359, 138 S.W.3d 664 (2003); *Zinger v. Terrell,* 336 Ark. 423, 985 S.W.2d 737 (1999) (both setting forth the elements that must be present to establish collateral estoppel). Nor was the issue essential to the judgment in the earlier case. Instead, the earlier case was decided on standing. The question of standing to sue is a threshold issue. *Farm Bureau Ins. Co. v. Running M Farms, Inc.,* |₈366 Ark. 480, 237 S.W.3d 32 (2006). It is fundamental in American jurisprudence that in order to bring a lawsuit against an opposing party, one must have standing to do so. Without standing, a party is not properly before the court to advance a cause of action. *Id.*

The *Restatement (Second) of Judgments* § 20(1)(a) (1982), provides that "[a] personal judgment for the defendant, although valid and final, does not bar another action by the plaintiff on the same claim ... [w]hen the judgment is one of dismissal for lack of jurisdiction, for improper venue, or for nonjoinder or misjoinder of parties." Courts considering the issue elsewhere have treated a lack of standing as the same sort of threshold justiciability issue, preventing the judgment from operating as a bar. *See, e.g., Cayer Enters., Inc. v. DiMasi,* 84 Conn.App. 190, 852 A.2d 758, 760–61 (2004) (holding that judgments based on want of jurisdiction, want of maturity, failure to prosecute, unavailable or inappropriate relief or remedy, or lack of standing are not rendered on the merits; collecting cases); *Batterman v. Wells Fargo Ag Credit Corp.,* 802 P.2d 1112, 1118 (Colo.Ct.App.1990) (collecting cases); *Sealy v. Dodge,* 289 S.C. 543, 347 S.E.2d 504 (1986); *Ullery v. Fulleton,* 162 Wash.App. 596, 256 P.3d 406 (2011). Com-

ments to the *Restatement* further provide that it does not change the result that the trial court denominated its dismissal as being "with prejudice," noting that "a dismissal on any of these grounds is so plainly based on a threshold determination that a specification that the dismissal will be a bar should ordinarily be of no effect." *Restatement* § 20 cmt. d.

### B. Was There a Conveyance to the Revocable Trust?

■ Appellant argues that the circuit court erred in finding that the decedent had conveyed his interest in the family limited partnership to the revocable trust and in allowing hearsay and parol evidence to be considered in reaching that conclusion. She contends that the trust |₉instrument, the partnership agreement, and the decedent's will are the complete expression of the decedent's intention, and parol evidence and hearsay should not be admitted to vary the terms of those instruments.

■ It has long been the rule that it is permissible for the settlor to act also as trustee and that a trust will be created without transfer of legal title to the property. *Sutter v. Sutter,* 345 Ark. 12, 43 S.W.3d 736 (2001); *Gall v. Union Nat'l Bank,* 203 Ark. 1000, 159 S.W.2d 757 (1942); *Cribbs v. Walker,* 74 Ark. 104, 85 S.W. 244 (1905). It is also permissible for a trust in personal property to be created by parol evidence. *Hawkins v. Scanlon,* 212 Ark. 180, 206 S.W.2d 179 (1947); *Hand v. Mitchell,* 209 Ark. 996, 193 S.W.2d 333 (1946). The premise for appellant's argument is that the schedule of assets to be conveyed to the trust was left blank at the time the trust was executed and the court allowed extrinsic evidence to vary those terms. However, this overlooks or ignores the fact that the decedent

reserved the power to add or remove property from the trust at his discretion, and he could have done so. A trust agreement that sets out by its own terms the method by which it may be revoked can be revoked only in the manner provided. *See Gall v. Union Nat'l Bank,* 203 Ark. 1000, 159 S.W.2d 757 (1942). Where, as here, the trust does not specify a particular method by which the trust must be modified or revoked, the power may be exercised by any method which sufficiently manifests the settlor's intention to modify the trust. *See* Ark.Code Ann. § 28–73–602(c)(2)(B) (Supp.2011); *Restatement (Third) of Trusts* § 63, cmt. c.

■ The statements at issue concern the decedent's intent when he executed his will, the family limited-partnership agreement, and the revocable trust. We think that the testimony was proper under Ark. R. Evid. 803(3) because it showed the decedent's intent that his partnership interest be conveyed to the trust. *See Greenwood v. Wilson,* 267 Ark. 68, 588 S.W.2d 701 (1979); *Easterling v. Weedman,* 54 Ark.App. 22, 922 S.W.2d 735 (1996); *Honey v. Hickey,* 26 Ark.App. 99, 760 S.W.2d 81 (1988). Therefore, the circuit court did not err in admitting parol evidence as to the decedent's intent to transfer his interest in the family partnership to the trust because the decedent retained the power to amend or revoke the trust at will. The question then becomes whether the decedent transferred his interest in the family partnership to the revocable trust during his lifetime.

Appellant relied on the testimony of the decedent's accountant, Jeff Shaneyfelt, that the tax returns and documents he prepared for the decedent indicated that the decedent held his interest in the family limited partnership in his individual capacity, not as part of the trust. On cross-examination, Shaneyfelt said that the capacity in which the decedent held his interest in the partnership did not make any difference for tax purposes unless the trust became irrevocable. He also said that he did not do accounting work for the trust and was unaware of its existence until after the decedent's death.

The personal representatives rely on testimony from William Haught and Stuart Hankins, attorneys who were involved in preparing the decedent's estate plan. Each attorney testified that he believed that the decedent intended in 1997 for his shares in the partnership to be held by the revocable trust in order to avoid probate. Haught said that the schedule of assets for the trust instrument was left blank, which was not unusual. Haught acknowledged that there was no document signed by the decedent that transferred the decedent's partnership interest to the trust. Haught also prepared a summary of the decedent's estate plan, dated May 29, 1997, that indicated that the decedent's interest in the family partnership was held by the revocable trust. This was prepared approximately six weeks after the creation of the partnership and the revocable trust and was submitted to various lenders who had loaned money to the decedent or his entities. Haught said that the decedent did not object when he mailed the decedent a copy of the summary. He also testified as to a 2003 exchange of emails in which he described the decedent's interest in the family partnership as being held in the revocable trust.

■ Our standard of review on appeal is not whether we are persuaded that there is clear and convincing evidence to support the circuit court's finding, but whether we can say that the court's finding that the fact was proved by clear and convincing evidence is clearly erroneous. *See Nichols v. Wray,* 325 Ark. 326, 925 S.W.2d 785 (1996). Here, the circuit court considered

the testimony and evidence concerning how the decedent held his interest in the partnership and concluded that the evidence was clear and convincing that he had transferred his interest to the trust. The court also noted that the decedent correctly reflected the ownership of the partnership interest in the summary of his estate planning provided to various lenders. We cannot say that the circuit court was clearly wrong in finding that there was clear and convincing evidence that the decedent had transferred his interest in the partnership to the trust.

*Removal of the Personal Representatives*

Finally, appellant argues that the circuit court erred in not removing the personal representatives because of the animosity between her and the representatives. We find no error.

Arkansas Code Annotated section 28–48–105 (Repl.2004) allows a court to remove a personal representative of an estate if that person "becomes mentally incompetent, disqualified, unsuitable, or incapable of discharging his or her trust, has mismanaged the estate, has failed to perform any duty imposed by law or by any lawful order of the court[.]"

In *Davis v. Adams*, 231 Ark. 197, 328 S.W.2d 851 (1959), the Arkansas Supreme Court affirmed the probate court's order removing the appellant as administratrix of her deceased husband's estate. In doing so the supreme court cited a Massachusetts case, *Quincy Trust Co. v. Taylor*, 317 Mass. 195, 57 N.E.2d 573 (1944), and noted that the *Quincy* court gave an interesting discussion on the word "unsuitable," which is one of the bases provided in section 28–48–105 for removing a personal representative. The court in *Quincy* stated:

> The statutory word "unsuitable" gives wide discretion to a probate judge. Past maladministration of a comparable trust, bad character, misconduct, neglect of duty, or physical or mental incapacity, warrants a finding that an executor or administrator is unsuitable. Such a finding may also be based upon the existence of an interest in conflict with his duty, or a mental attitude toward his duty or toward some person interested in the estate that creates reasonable doubt whether the executor or administrator will act honorably, intelligently, efficiently, promptly, fairly and dispassionately in his trust. It may also be based upon any other ground for believing that his continuance in office will be likely to render the execution of the will or the administration of the estate difficult, inefficient or unduly protracted. Actual dereliction in duty need not be shown.

*Quincy*, 57 N.E.2d at 574, cited by *Davis*, 231 Ark. at 205 n. 5, 328 S.W.2d at 856 n. 5.

Here, appellant argues that the animosity between herself and the personal representatives renders them "unsuitable" to continue. In her brief, she cites several incidents that she contends exemplifies this animosity, including, among other things, that the personal representatives frequently refer to her as a "bitch," that they failed to inform her that they had probated the decedent's will, and that the personal representatives failed to disburse funds from the family limited partnership to the decedent or to assist in providing for his medical care and equipment. There was testimony to support these allegations. She also asserts that her election to take against the decedent's will creates a financial conflict of interest for the personal representatives because the amount she receives serves to reduce the amount the personal representatives receive. However, appellant cites to no evidence that the personal representatives failed to comply with the probate court's orders or

were negligent in their handling of the estate. Moreover, the circuit court considered this evidence and denied the motion from the bench, finding that the evidence fell "far short" of that necessary to remove the personal representatives. The court understood that there was animosity but noted that there would be court supervision of the probate process. The court further admonished the personal representatives to put appellant's interests above their own because they owe her a fiduciary duty. The circuit court decided not to remove appellees as the personal representatives of the estate, and our standard of review requires us to affirm that ruling unless it is clearly erroneous. *Taylor v. Woods*, 102 Ark.App. 92, 282 S.W.3d 285 (2008). We cannot say that the circuit court's decision has left "a definite and firm conviction that a mistake has been committed." Accordingly, we affirm the circuit court's decision not to remove the personal representatives.

Affirmed.

GLADWIN and BROWN, JJ., agree.